JONATHAN K. COOPER

*v.*

WILLARD M. RANDALL *et al.*

1. EVIDENCE—*opinions of witnesses.* The mere opinion of a witness as to value, or the amount of damages property has sustained, is usually admissible, when based on information as to value, or the extent of the injury when testifying as to the amount of damage. When a witness has stated his knowledge of the value of the class of property about which he is testifying, he may usually be asked his opinion, but not otherwise.

2. It is not error for the court to refuse to permit a witness to answer a question as to the cost of constructing a house, who had stated he was not a mechanic and was unacquainted with such cost.

3. SAME—*proof as to injury to other property than that in controversy.* In an action on the case for injury to a dwelling house by the erection of a mill, by which dust, dirt and other impurities are thrown in and upon the house, it is error to exclude evidence that such impurities were thrown by the mill upon other buildings in the vicinity of plaintiff's house, as such evidence is pertinent to the issue. While such proof would not be direct as to the amount of impurities actually deposited on the plaintiff's house, it would tend to show that the mill was capable of inflicting the injury complained of, and justify the inference that if other buildings similarly situated were thus affected, the same would be true as to the plaintiff's premises.

4. SAME—*cross-examination.* The cross-examination of witnesses is largely discretionary with the court, in its scope, and a judgment will not

be reversed because the court refused to permit a witness to answer a question on cross-examination, unless it appears that the party may have been injured thereby.

5. SAME—*in rebuttal.* In an action to recover damages for a depreciation in the value of the plaintiff's dwelling house, alleged to have been occasioned from dust and other impurities thrown upon and into the house from the defendant's mill, it is competent for the defendant to prove that such depreciation in value resulted from some other cause.

6. REVERSIONARY INTEREST—*of injury thereto.* Where a landlord has leased a house, and a mill was erected so near thereto as to deposit dust, smut, etc., on the house, a recovery for the damage occasioned thereby to the reversion may be had by the landlord; but if it is not permanent and injurious to the reversion, the landlord can not recover.

7. MEASURE OF DAMAGES—*in such case.* It would be error in such a case to permit proof that dust was thrown on the building after suit was brought, as a means of measuring damages for injuries sustained thereby prior to that time.

8. Where a reversioner sues for injury to the freehold, he must be restricted to damages to the reversionary interest, and it would be error to give an instruction which would authorize a verdict for all damages sustained, as well by the tenant in possession as the landlord. Each has his remedy: the former for injury to his possession, the latter for injury to his reversion.

9. ACTION—*for injury resulting from the use of the property of another.* In an action to recover for injury to the plaintiff's dwelling house, resulting from dust, etc., thrown thereon from the defendant's flouring mill, it is not error to instruct, for the defendant, that a man has the right to erect a mill in a proper place, and to run and use it in a proper manner, and that it is not the policy of the law to hamper and retard, but to foster such property in its proper and legitimate use, and that if the mill was in a proper place, used and operated in a proper manner, without material injury to plaintiff's reversionary interest, then the jury should find for the defendant.

10. Nor is it error in such case to instruct that the law does not give damages for every inconvenience or interruption of the rights of another. That there are annoyances which, by the nature and condition of society, must accrue to property of individuals, which do not in themselves create a legal liability. But the injury for which the law gives damages must be real, and not imaginary, and not whimsical; it must be real, and not simply inconvenience or trifling interruption.

APPEAL from the Circuit Court of Peoria county; the Hon. SABIN D. PUTERBAUGH, Judge, presiding.

Messrs. HOPKINS & McCULLOCK, for the appellant.

Messrs. HARDING & McCOY, and Mr. WM. W. O'BRIEN, for the appellees.

Mr. JUSTICE WALKER delivered the opinion of the Court:

This was an action on the case, brought by appellant, in the Peoria circuit court, against appellees, for the recovery of damages claimed to have been occasioned to appellant's premises by constructing and operating a flouring mill on a lot near to the premises of appellant, whereby chaff, dust, dirt and other impurities were thrown from the mill upon and into appellant's house.

The declaration contains five counts. The first, second and fourth proceed for injuries to his own occupancy of the premises, and the third and fifth for injury to his reversionary interest.

It appears from the evidence that the mill was erected in the fall of 1867, and the suit was brought in April, 1868. Appellant says he claims no damages from the old mill which occupied the ground before this one was erected. It, then, follows that the damages claimed are for injuries produced by the mill after its completion in the fall of 1867, and until April, 1868, when the suit was commenced. The case was previously submitted to this court, and is reported in 53 Ill. 24, when it was reversed, because improper evidence was admitted, and improper instructions given.

It is first insisted that the court erred in refusing to permit appellant to testify as to what, in his judgment, the damage was, occasioned by the mill. Although the court may have excluded the answer to the specific question, still he had already stated what he considered the damage. The witness stated that the property was injured in value $1000, and thereupon appellee objected to appellant stating his judgment as to the amount of the damage, and the objection was sustained by

the court, but it does not appear that the evidence was excluded, or the jury told to disregard it. The mere opinion of a witness as to value, or the amount of damages, is usually admissible, when based on information as to value, or the extent of injury property has sustained, when testifying as to its damage. When a party has stated his knowledge of the value of the class of property about which he is testifying, he may usually be asked his opinion, but not otherwise. But while this evidence was unobjectionable, it does not seem to have been taken from the jury, and he stated the property to have been, in his judgment, worth, in market, before the mill was erected, $3000, and afterwards but $2000, which was another mode of stating the same thing, with the reason for judgment. It is impossible for us to see how the least injury could have resulted to appellant from this action of the court.

The court below refused to permit appellant to prove that the mill threw dust, smut and other impurities of the same kind, upon other property in the same vicinity. And this is assigned as error. A majority of the court are of the opinion that this evidence was admissible, for the reason that it tended to show the extent and character of the injury sustained by appellant; that while it was not direct as to the amount of impurities actually deposited, it tended to show that the mill was capable of inflicting the injury complained of by appellant. If the deposit was general in the immediate neighborhood, and large quantities were deposited on other buildings similarly situated, it would be a just inference that the same was true of appellant's house. It would, if admitted, have tended to strengthen and lend weight to the other evidence appellant had already introduced. When it is considered that the issue in the case was, whether smut, dirt, etc., was deposited on appellant's house, and this was the question controlling the case, the pertinency of this evidence becomes obvious. Had it related to a collateral question, or had it been but incidentally involved, it might have been otherwise. The evidence was, therefore, improperly rejected.

It is next insisted that the court below erred in refusing to permit appellant to prove that the dust thrown upon his premises by the mill after this suit was commenced had seriously impaired the value of the property, and prevented the renting of the house. It is urged that the injury was permanent in its character, and that proof that dust was subsequently thrown upon the property would have afforded the jury another criterion for measuring the damages properly allowable. It is admitted such subsequent acts would not form the basis of damages in this suit, and this is undeniably true, as a party can only recover damages for acts done before the suit was commenced. When, however, a wrongful act is done which produces an injury which is not only immediate, but, from its very nature, is permanent, and must necessarily continue to produce loss independent of any subsequent wrongful acts, then all damages resulting both before and after the commencement of the suit, may be estimated and recovered in one action. Here the right to recover is based upon the act of causing dust, etc., to be thrown on the premises prior to the commencement of the suit, and if that caused a permanent injury, then the jury could have given damages to the full extent it had produced injury.

When, for instance, a party undermines the foundation wall of another's house, and permanent injury results by its continuing to injure the house after the suit is brought, then subsequent damage may be recovered, as it all flows from the same act. But when subsequent damages are produced by subsequent acts, then the damages should be strictly confined to those sustained before suit brought. If a different rule were to prevail, a plaintiff would be enabled to recover double damages. In this case, we can not comprehend how proof may be made of the amount of damages caused by subsequent acts, as a criterion to measure the damages from acts previously done, and still not recover damages for such subsequent acts. To permit proof of such damages would necessarily be to allow such damages, and the defendant still be liable to another

21—59TH ILL.

suit and recovery for such subsequent acts. It seems to us that it was intended, under another name, to recover damages that could not be had in this action. We perceive no error in this ruling of the court.

It is urged that the court erred in not permitting the witness Anderson to state whether this house could at any time have been built for $2500, he having, on his direct examination, fixed its value at $1800 or $2000. The witness had previously stated he was not a mechanic, and had never engaged in building houses; and from this we infer that he designed to be understood as saying he had no knowledge of the cost of building houses, and for that reason the court did not err in excluding the evidence. But a stronger reason was, that all know that the cost of a building may have nothing, or very little, to do with its market value. That depends on the demand, the business of a place, location, and a variety of circumstances frequently almost entirely independent of the cost of property, or its improvement.

It is urged that the court erred in refusing to permit witnesses to answer questions on cross-examination. Such an examination is largely discretionary, and this court will not usually reverse unless we can see that the discretion has been so exercised as to have produced injury. A careful examination of the evidence in this case fails to show that there was not a sufficient latitude allowed in cross-examination, and we fail to see that, had the questions been allowed, there is the least probability that the result would have been different. It is only when we can see that it is probable that wrong has been done to the party complaining, that we will reverse for such rulings of the court.

It is objected that the court below erred in admitting evidence on behalf of appellee. As evidence of the injury sustained by the property from the erection of the mill, appellant had proved the property to have largely depreciated. When he made this proof, it was to satisfy the jury that the dust from the mill had produced that result, and that he was entitled to

damages to that extent. This being the purpose and object of appellant's evidence, nothing could be more reasonable than to permit appellee to show that the depreciation was owing to some other cause. This is so reasonable and just that we had supposed it was elementary, and needed no adjudication to commend it to the entire profession. The greater part of the other evidence complained of is of a similar character, and there being so much of it that it would lead to prolixity to refer to each item, we will dispose of it by saying we can perceive no error in its admission.

It is insisted that the court erred in refusing appellant's fifth instruction. That instruction would, no doubt, have been proper had appellant been the occupant of the house, but when it is remembered that it was occupied by a tenant, and appellant could only recover for injury he had sustained as a reversioner, it will be seen that the rule announced in this instruction was not properly limited. The first clause of the instruction is correct in the assertion that a man must so use his own as not to injure another. But the next clause is not correct, when applied to the facts in this case. It asserts that, if appellees, in prosecuting their business, were guilty of such negligence as to cause injury to appellant's property, however slight, that would render them liable to appellant to the extent of the injury. It will be observed that this proposition entirely excludes the fact that appellant only had a reversionary interest; and yet, had it been given, it would have entitled a recovery for all of the damage done. The tenant was entitled, if injury was done, to recover damage, and no one would say that they could both recover the same damages, or that the landlord could recover for injury sustained by the tenant. If the tenant's possession was disturbed, or he was injured in the enjoyment of the property, he could recover for such injury. If the same or any other wrong produced injury to the landlord's reversionary interest, then he has a right to recover for that injury; but it does not follow that because a slight injury may have been done to the property, unless it was permanent

in its character, that it injured appellant's reversionary interest.
The third clause of the same instruction asserts the same
principle as the second, but in a different form, and without
the qualification necessary to have rendered the second proper.
And the fourth clause asserts that if appellees caused dust,
smut, etc., to be deposited on appellant's premises, the law
presumes he has thereby sustained damages. This clause is
vicious for the same reason. The law could not, from such
facts, presume a permanent injury affecting the reversionary
interest, but might as to the person in possession. There was
no error in refusing this instruction. It should have been
modified so as to inform the jury that any injury to the prop-
erty of a permanent character, and affecting the reversion,
however slight, would entitle appellant to recover to the extent
of the injury sustained.

It is next urged that the court below erred in giving the
sixth and eighth of appellees' instructions. These are the
instructions :

No. 6.—"A flouring mill is not necessarily a nuisance, nor
unlawful in its use, management or purpose. A man has a
right to erect a mill in a proper place—to run, use it, etc., in
a proper manner ; and the policy of the law is not to hamper,
obstruct or retard, but to foster, encourage and protect such
property in the proper and legitimate use and operation of
the same; and if said mill is in a proper place, used and oper-
ated in a proper manner, and without material injury to the
possession or reversionary right or interest of plaintiff, jury
should find for defendants. "

No. 8.—"The law does not give damages for every incon-
venience to, or interruption of the rights of another. There
are numerous annoyances which, in the nature and condition
of society, must inevitably arise and accrue to property of indi-
viduals, which can not in themselves fix a legal liability on the
persons causing such inconvenience or interruption. The

injury for which the law gives damages must be real, and not imaginary or whimsical. It must be sensible, tangible, and material, and not simply inconvenience or trifling interruption, and unless such injury has been inflicted in this case, the jury should find for defendants. "

The court modified the sixth and eighth instructions for defendants, thus: " By the term ' material injury,' used in said instructions, is meant that the plaintiff must show a real, and not imaginary or fanciful, interference with the reasonable enjoyment of his property."

We perceive no objection to the sixth instruction, as modified. The criticism only shows that it may be tautological, but it was in nowise calculated to mislead the jury. The qualification of the eighth we think renders it free from objection. It is true, that the instruction might have omitted the words " sensible and tangible," as connected with injury. But, used in their connection, any one would understand from these terms thus employed that they were the opposite of imaginary or whimsical. And the word " material " is properly qualified. We do not see that these expressions could have misled the jury. We all know that there are many annoyances, inconveniences and interruptions incident to the enjoyment of property in a state of society, for which the law does not and can not give compensation. Persons residing in a city or near a public highway, are liable to inconvenience, annoyance and interruption in the enjoyment of their property, from the noise and dust produced from travel over streets and highways, and yet for these no one thinks of suing the person using the way, for damages. So of manufactories, machine shops, and the like. They may necessarily produce annoyances and interruptions to those in the immediate vicinity by the noise of machinery or the collection of persons at these places, and still those suffering the inconvenience have no right to recover damages.

On a careful examination of the entire evidence, we find it conflicting, and it was for the jury to consider it and find according to its weight.

For the error indicated in rejecting evidence, the judgment must be reversed and the cause remanded.

*Judgment reversed.*