## J. S. WYLIE ET AL.
## v.
## JAMES G. ELWOOD.

*Nuisances—Action for Damages Resulting from Erection and Use of Coal Shed Adjacent to Residence—Public Nuisance and Private Rights— Evidence— Instructions.*

1. The owner of a private residence may have a right of action against the parties who erect and operate a coal shed adjacent to his premises for his individual damages, although the acts of defendants may amount to a public nuisance.

2. Where large bodies of men congregate to share the benefits of the commerce of a city there must of necessity be some inconveniences borne without legal remedy, but there is no legal nor physical necessity for locating immense coal sheds in the very heart of the business and residence property in cities along the line of railways.

3. Minor exceptions to the instructions and the admission of evidence overruled.

### [Opinion filed December 16, 1889.]

APPEAL from the Circuit Court of Will County; the Hon. DORRANCE DIBELL, Judge, presiding.

Messrs. HALEY & O' DONNELL, for appellants.

The plaintiff is not entitled to maintain this cause of action for the reason that, if the business of the defendant Wylie as carried on and conducted by him amounts to a nuisance, it is a public nuisance; that the annoyance complained of by the plaintiff is only such as he in common with the public is subjected to, and that therefore he can not have a private action to redress his supposed injury. Lansing v. Smith, 4 Wend. 10; Milhan v. Shark, 29 N. Y. 611; Soltan v. DeHeld, 9 Eq. L. 104; Brunning v. N. O. Canal & Banking Co., 12 La. 541; Barnes v. City of Racine, 4 Wis. 424; Iverson v. Moore, 12 Mod. 263.

Messrs. BENJAMIN OLIN and C. W. BROWN, for appellee.

C. B. SMITH, J.   This was an action on the case brought by
James G. Elwood, appellee, against J. S. Wylie, John E.
Sutherland, Michigan Central Railroad Company and Joliet &
Northern Indiana Railroad Company, claiming damages result-
ing to appellee's residence arising from the use of a certain
coal shed, by the defendants, near his residence.   The plea
was not guilty.

A trial was had, resulting in a verdict of guilty as to
defendants Wylie and Sutherland, and damages assessed
against them at $25.   The two railroad companies were found
not guilty.   The court overruled a motion for a new trial as
to the defendants found guilty, and rendered judgment upon
the verdict.   From that judgment defendants Wylie and
Sutherland appealed to this court and ask for a reversal of
the judgment, and have assigned various errors upon the
record.

The substantial and material facts as disclosed by this
record are these:   The two railroads above named both run
through the city of Joliet and have stations there, and haul
into the said city large quantities of coal.   The coal shed in
controversy lies 610 feet along the tracks of the Michigan
Central railroad, in block 17 of Bowen's addition to Joliet.
This shed is about twenty-eight feet high to the eaves and
about fifty-four feet wide, and is used by Wylie and Suther-
land as a coal depot, where immense quantities of coal are
stored in the summer season and shipped out in the fall and
winter into cars and distributed to various points in Illinois
and Iowa to the local dealers.   This shed is equipped with all
the modern and best known means for loading and unloading
cars and elevating the coal and distributing it by steam by
means of chutes, shovels, hoppers and pulleys.   The capacity
of the steam apparatus is such that it can handle from
fifteen to twenty-three cars of coal per day, and take it out
of the cars, elevate and distribute it through the various
parts of this shed.   The railroad companies deliver and receive
from this large depot large quantities of coal during the year.
Prior to the erection of this large shed, for a good many
years a part of this 600 feet had been used for storing and

handling coal, but only in a comparatively small way, and it had been handled only by shovels, handled by men and hauled off in wagons. But in May, 1887, defendant Wylie leased the ground of the Michigan Central for the term of three years and enlarged this structure to its present dimensions. Wylie was to pay but one dollar per year rent for the use of the ground and to have the privilege of removing his buildings at the termination of his lease.

The shed was erected in the immediate vicinity of a large number of stores, residences and other business property, and, among others, near to a hotel, and was adjacent to three of the principal streets of the city. It was erected so close to plaintiff's residence that the water ran from its eaves upon the rear of plaintiff's lot. Around the entire top of the building under the eaves was an opening for the escape of sound and dust; in addition to this there were other openings from which the dust and noise of the machinery escaped. The coal was handled inside this building so as to generate large volumes of coal dust, which escaped from the openings and settled in and upon all the houses and stores in the immediate vicinity. The large and heavy machinery needed in hoisting and distributing the coal in the building and taking it from and returning it to the cars, kept up a constant grating, screeching and rumbling sound of a most disagreeable and annoying character to all persons within hearing distance. The declaration seeks only to recover damages for the injury to plaintiff's possessions and his peaceable and quiet enjoyment of his property, from June 4, 1888, to July 5, 1888.

The proof is very clear and abundant that the plaintiff and his family were greatly annoyed and disturbed in the occupancy and use of their residence during the time covered by the declaration. It is proven by many witnesses that when plaintiff's house was open the clouds of coal dust pervaded his whole house, and settled upon beds and tables and dishes and furniture, and became a constant and seriously annoying nuisance; some of the time his house had to be kept closed, and when the weather was too warm to sit in the house with closed doors, plaintiff's family sat outside. The roof of

plaintiff's building was so covered with coal dust that the rain water running into the cistern had to be strained before it could be used. In addition to the annoyance from the coal dust, plaintiff and his family were constantly annoyed and disturbed by the noise of the machinery. It is also in proof that on some occasions an unnecessary and unreasonable use was made of the steam whistle to the great annoyance and vexation of the plaintiff and his family. On one occasion, at least, the steam whistle was allowed to blow for an entire hour and was not stopped until plaintiff went and made complaint. But aside from this unnecessary use of the whistle, there does not seem to have been any improper use of the structure in the mode of handling coal. No more dust or noise resulted than seems to have been necessary or unavoidable in handling that amount of coal. No negligence (except in the use of the whistle) is proven so far as it relates to the handling of the coal.

We are called upon to determine whether the jury was justified in finding for the plaintiff under this state of the proof.

The first ground of defense relied upon by the defendants is that if the proof shows a nuisance then there is sufficient proof to show it is a public nuisance, and for which it is insisted a private action will not lie. In answer to this position taken by appellant, we have first to say that in our judgment the proof does not establish a public nuisance within the meaning of the law. A public nuisance, so as to become an offense to the public and be, therefore, indictable, must be a nuisance to something more than a very small portion of a neighborhood or community. But assuming that the proof shows the coal shed and its use to be a public nuisance, we can not hold that a private action may not be maintained for a real and substantial injury to the property, or its use to the occupants thereof, simply because many persons may suffer from the same nuisance in like manner. It may be and is undoubtedly true that authorities can be found in support of that view, but we can not give them our assent nor follow them. The 19th section of the bill of rights of the consti-

tution of this State declares that "every person ought to find a certain remedy in the law for all injuries and wrongs which he may receive in his person, property or reputation."

Under this broad shield of the constitution, every man has a right to call upon the courts to protect him in his property, person and reputation, without reference to whether other persons are also suffering from the same cause. Many of the most serious nuisances which affect property and persons do affect some considerable part of the public, such as neighborhoods, frequently consisting of many people, and many houses. Tanyards, slaughter houses, rendering establishments and powder houses are familiar illustrations of what may become, and frequently are, nuisances of the most serious character, detrimental alike to property, person, health, and even hazardous to life itself. It is the common knowledge of all mankind and of which courts will take judicial knowledge, that where human habitations fall within the shadow and under injurious influences of such like establishments, whereby the air is rendered impure from foul and offensive stenches. or where the constant uproar and turmoil of heavy and clanking machinery takes away all quiet, or where the near presence of dangerous and combustible substances overshadows a neighborhood with constant fear, or where the air is constantly laden with clouds of dust and smoke, the property of the individual, at least for the purposes of occupation, is rendered less valuable; and when the proof shows that such injury is of a substantial and permanent character, then the law will afford a remedy to each individual so affected, and the very first case cited by appellant in support of his contention, Lansing v. Smith, 4 Wend. 10, clearly recognizes and declares such to be the law. The chancellor who announced the majority opinion in that case, in conclusion said : "But the opinion I have formed on this point is, that every individual who receives actual damage from a nuisance may maintain a private suit for his own injury, although there may be many others in the same situation. The punishment of the wrongdoer by a criminal prosecution will not compensate for individual injury, and a party who has done a criminal act,

can not defend himself against a private suit by alleging that he has injured many others in the same way and that he will be ruined if he is compelled to make compensation to all." In Walker v. Shepardson, 2 Wis. 384, it was held that when the defendant created a public nuisance by placing obstructions in a navigable stream, for which he might be indicted, if these acts also create or cause a private and special injury to the plaintiff, and it appears that the defendant persists in the commission of those acts which must result in injury to the plaintiff, the court will interpose by injunction to prevent the threatened injury, and this, too, at the suit of a private individual. In Cooper v. Randall, 59 Ill. 317, which was an action to recover for damages resulting to plaintiff's premises from the dirt, dust and chaff which was thrown on plaintiff's house from the mill, it was alleged, that by the running of the mill near to plaintiff's residence, he was injured in its possession and occupancy from a constant shower of chaff, dirt, dust and other impurities falling from the mill upon his house. In order to show the extent of the injury and that it was not limited to himself alone, he offered to prove by others living near the mill that their property was affected in the same manner and from the same cause. This proof was rejected by the Circuit Court and on appeal to the Supreme Court it was held proper. The court said: "If the deposit was general in the immediate neighborhood and large quantities were deposited on other buildings similarly situated, it would be a just inference that the same was true of appellant's house."

These references are sufficient to show that the position taken by appellant, that no private action can be maintained if the nuisance be a public one, can not be maintained. It has neither reason, justice nor respectable authority in its support. But appellants contend that the evidence does not support the verdict. This objection is based on the assumption that, notwithstanding appellee was actually damaged in the occupancy of his home, still it is for such an injury, as under the circumstances, he can not recover for. It is contended the coal shed was erected on the railroad right of way, at a place convenient and necessary for handling, loading and unloading

coal, and the business being lawful, and conducted in the best possible manner and with the most approved appliances, that the appellant had therefore the legal right to exercise the business at that point.

We have before stated that this shed was built and equipped in close proximity to a large number of residences and stores, and was enlarged to its present capacity, and equipped with steam machinery long after the most of these buildings, including plaintiff's residence, were built; we have also seen that the proof abundantly shows that the coal shed became a nuisance (in the manner it was operated) during the time complained of, not only to the plaintiff's property, but also. to others in the same vicinity.

Whether the sheds were located in a proper place, and whether their use became a nuisance to the plaintiff, were questions of fact for the jury under proper instructions. Both these questions were found against appellant by the jury.

The maxim of the law, that every man must so use his own property and privileges as to do no substantial injury to another, applies to all men alike, and to railroads as well as to individuals. No corporation, however great or strong in its wealth or power, can be permitted, either from caprice, necessity. or pleasure, to deprive the humblest citizen of his property, or take away from him the right to enjoy his property without substantial molestation, without making just compensation therefor; nor can corporations confer that right upon another. It can not be true as a matter of fact or law that there is any physical or legal necessity for locating immense coal sheds in the very heart of business and residence property in cities, along the lines of railways. Shively v. Cedar Rapids R. R. Co., 37 Northwestern Reporter, p. 133. It may be more convenient for the roads and their shippers that such location should be selected, but such convenience must yield and be abandoned where substantial rights of others are involved. It is no answer to say that the shipment and handling of coal in large quantities by railroad companies and their lessees is a necessary and lawful business, and that it must be done at railroad stations—for many kinds of

Wylie v. Elwood.

business, strictly lawful and necessary, become nuisances when carried on near human habitations, and are compelled to seek the more secluded places, away from human habitations, for their existence.

We fully recognize the principle that it is not every trifling or unsubstantial injury or annoyance which persons feel in cities or towns, which will justify the interference by courts with commerce factories, or the many various forms of business enterprises in which men engage. Where large bodies of men congregate to share the benefits of the commerce of a city or town, there must of necessity be some inconveniences borne without complaint and without legal remedy. There will be smoke and dust and noise, and the blare of the steam whistle and the rattle of machinery will be heard, but so long as these things are general in their nature, and are not subversive in a substantial and material degree to private rights, they must be borne without redress.

Appellant insists the court erred in allowing certain physicians to testify as to the injurious effects of coal dust upon the health of appellee and his family. We are unable to appreciate the force of this objection. It was clearly right. It is further insisted that the court erred in allowing appellee to give his opinion as to the amount of his damage. In this there was no error. Ottawa Gas Light Co. v. Graham, 35 Ill. 346.

Lastly, it is urged the court erred in giving and refusing instructions. We have carefully examined the instructions given for the plaintiff, of which complaint is made, as well as all others given for plaintiff and defendant, and we are entirely satisfied that the defendant has no ground for complaint. We think the instructions correctly state the law as given for the plaintiff, and that those given for the defendant were fully as favorable to them as they had any right to expect.

While the amount involved in this judgment is very small, still the controversy goes much further in its effect, and involves the right for this large coal shed to exist at the place it is located; and the importance of the question involved, and the consequences liable to follow, have induced us to give this

## 252          APPELLATE COURTS OF ILLINOIS.

record a very careful and patient investigation, and has led us into a much more elaborate discussion of the questions involved, than we should have otherwise done, had there been nothing more than the amount of this judgment involved.

Finding no error in the record the judgment is affirmed.

*Judgment affirmed.*