J. S. WYLIE *et al.*

*v.*

JAMES G. ELWOOD.

*Filed at Ottawa October 31, 1890.*

1. NUISANCE—*what may constitute a nuisance—by reason of its locality.* A coal shed for the loading, unloading and storing of coal by the use of machinery, though not a nuisance *per se,* may be such from the particular locality in which it is situated, as, in a thickly populated part of a city.

2. SAME—*right of action—of a public and a private nuisance.* The general rule is, that public or common nuisances can only be proceeded against by indictment; but it is also a well established rule, that when a person sustains from a public nuisance a special damage different from that common to all, he may have his action therefor. The doctrine now is, that a nuisance may be at the same time both public and private.

3. An individual who receives actual damage from a nuisance may maintain a private suit for his own injury, although there may be many others in the same situation. So the use of a steam engine in a crowded street may be a public nuisance, but if the smoke from it injures a man's goods in his shop or house, and makes his dwelling uncomfortable, he will have a right of action.

4. If one is injured in the enjoyment of his residence in a populous part of a city, from the erection and operation of a large coal shed, by noises from the use of machinery, and the grinding of coal in being moved, loaded or unloaded, and from deposit of dust, etc., he may have his action against the author of the nuisance; and it is no defense to show that the same act inflicted a like injury upon many others.

5. SAME—*evidence—showing character and extent of injury.* In an action on the case, to recover damages from the operation of a coal shed, and the handling of coal by machinery propelled by steam, in a populous part of a city, many owners and occupants of buildings in the vicinity were admitted to testify that they also were annoyed and injured by the noises and coal dust, in the use of their property: *Held,* admissible to show the character and extent of the plaintiff's injury, and as tending to prove that the nuisance was capable of inflicting the injury complained of.

6. RIGHT OF WAY—*by grant—damages as to land not included in the grant.* In 1854 the owner of land conveyed a part of it to a railway company, for right of way: *Held,* that such deed could not be held to release any subsequent damages as to the remaining land of the grantor by the use of the part conveyed for railway purposes.

7. The conveyance of a strip of land to a railway company will not give the grantee the right to make any use of it which would injuriously affect the remaining land of the grantor. The law annexes the condition that the owner of land shall so use it as not to produce injury to another.

8. Under the constitution of 1870, where land has been acquired for railroad purposes by grant as well as by condemnation, all damages to the owner's land not taken, for which an action would lie at common law, are presumed to have been considered in fixing the price. But no such presumption arises in respect to deeds for right of way under the constitution of 1848.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Will county; the Hon. DORRANCE DIBELL, Judge, presiding.

Messrs. HALEY & O'DONNELL, for the appellants: ·

A private person can not sue for a public or common nuisance. *Williams' case,* 5 Coke, 72; 1 Coke's Inst. 560, 556; *Hackney* v. *State,* 8 Ind. 494; *Lansing* v. *Smith,* 4 Wend. 10; *Milhan* v. *Sharp,* 29 N. Y. 611; *Barns* v. *Racine,* 4 Wis. 454; *Iveson* v. *Moore,* Ld. Raym. 486; 12 Mod. 263.

As condemnation proceedings are presumed to consider and include all damages suffered, so deeds of rights of way are presumed to include all damages arising from a proper construction of the improvement. Mills on Eminent Domain, sec. 110; *Norris* v. *Railroad Co.* 28 Vt. 99; 2 Wood on Ry.

WYLIE *et al. v.* ELWOOD.    283

Brief for the Appellee. Opinion of the Court.

Law, pp. 919, 923, notes 1, 5 ; Redfield on Railways, sec. 81, note 1 ; *Railroad Co.* v. *Loeb*, 118 Ill. 203 ; *Dunsman* v. *Railway Co.* 72 Iowa, 182 ; *Clarke* v. *Railroad Co.* 36 Mo. 202 ; *Railway Co.* v. *Smith*, 111 Ill. 363.

Mr. BENJAMIN OLIN, and Mr. G. W. BROWN, for the appellee :

Annoyances far less serious than those of which appellants are guilty have been repeatedly declared to be a nuisance on which an action will lie. Wood on Nuisances, (ed. of 1875,) p. 471, sec. 429, p. 599, sec. 570 ; *Cooper* v. *Randall*, 53 Ill. 24 ; 59 id. 324 ; *Wahle* v. *Reinbeck*, 79 id. 323 ; *Whitney* v. *Bartholomew*, 21 Conn. 213.

A railroad company can claim no greater rights in the use of its property than a private citizen. *Railroad Co.* v. *Grabill*, 50 Ill. 241 ; *Snell* v. *Buresh*, 123 id. 156.

To erect a building and use it in an improper place, to the injury of another, is of itself a wrongful act. (*Whitney* v. *Bartholomew*, 21 Conn. 212.) But, in any event, private persons who sustain special damages from the acts of the corporation can recover therefor. *Stone* v. *Railroad Co.* 68 Ill. 395 ; Wood on Nuisances, 789-792 ; *Shively* v. *Railroad Co.* 74 Iowa, 169.

The acts here complained of constitute a use of the premises purchased which was not contemplated, and create an injury in the nature of a new and additional burden to the adjoining premises not purchased. *Railway Co.* v. *McDougall*, 118 Ill. 229 ; 126 id. 111.

Mr. JUSTICE MAGRUDER delivered the opinion of the Court :

This is an action on the case, brought in the Circuit Court of Will County, by the appellee, Elwood, against the appellants, Wylie and Sutherland, and also against the Michigan Central Railroad Company and the Joliet and Northern Indiana Railroad Company, to recover damages sustained by the plaintiff below during the month from June 4 to July 5, 1888, in the use, occupation and enjoyment of his dwelling-

house, caused by the erection and operation by the appellants of a large coal-shed adjoining said dwelling-house in the city of Joliet, and the handling therein of large quantities of coal by means of machinery driven by steam-power, whereby intolerable noises were produced, and great quantities of coal dust and dirt were cast upon and into said house, which dust and dirt continually settled down in large quantities upon the furniture, books, food, clothing and other things in the house, to the great annoyance of the plaintiff, and so as to be destructive of the comfort and health of himself and his family and cause material injury to his possession, use and enjoyment of his home. Under the instructions of the court, the jury, upon the trial below, found the two Railroad Companies not guilty, and returned a verdict of guilty against the other defendants, the two appellants here. Judgment was entered upon the verdict. The Appellate Court has affirmed the judgment, and the case comes here by reason of a certificate of importance granted by that court.

The dwelling house and the coal-shed are both located upon the south half of Block 17 in Bowen's Addition to Joliet. The south half of this block lies between Jefferson street on the north and Washington street on the south, and between Michigan street on the west and Eastern Avenue on the east. On July 3, 1854, Joel A. Matteson and wife executed a deed conveying to the Joliet and Northern Indiana R. R. Co. the south part of the south half of the block lying between Michigan street and Eastern Avenue, fronting south on Washington street and having a width or depth of 130 feet. It is claimed that this strip, 130 feet wide, was leased by the J. and N. I. R. R. Co. to the Michigan Central R. R. Co., though no such lease was produced in evidence. On May 2, 1887, the Michigan Central R. R. Co. leased the strip to the appellant, J. S. Wylie of Davenport, Iowa, for three years at a nominal rental of $1.00 per year for the storage and sale of coal, the lessor reserving the right to terminate the lease if the business should

not be conducted to the satisfaction of the company, or the latter should desire the property for its own use. The coal shed in question was erected upon this strip early in the summer of 1888 by Wylie, whose superintendent or manager is the appellant, Sutherland.

On July 4, 1854, Joel A. Matteson and wife also executed a deed conveying to N. D. Elwood, the father of the appellee, the undivided half of that part of block 17 lying between the south line of Jefferson street and the north line of the strip sold on the day before to the J. and N. I. R. R. Co., said strip having a depth or width of about 145 feet, and extending from Michigan street to Eastern Avenue. Appellee acquired his title as devisee under his father's will, and by deed from his father's executor. His house is located upon the strip so sold to his father, and fronts upon Jefferson street. The south line of his lot adjoins the north line of the lot on which the coal-shed stands, and water from the eaves of the latter falls upon the lot. He built his house, and improved the grounds around it, and occupied it as a home, many years before the coal-shed was erected.

The coal-shed is about 610 feet long, 28 feet high and from 54 to 56 feet wide, built of lumber with a stone foundation and a roof covered with tarred paper. It is open at the west end and on the south side, and has an open space on the north side between the siding and roof, so that the coal dust escapes upon the adjoining premises. Cars are switched from the railroad tracks into the shed upon a raised platform. The coal is thrown into an iron hopper by means of an iron scraper operated by steam power, and is then received into an iron conveyer run by steam, and lifted from 20 to 28 feet high and emptied into a chute or trough plated with iron, and conveyed through the same, and dumped upon the floor through openings in the chute. The shed will store 24,000 tons of coal. In June, 1888, from 15 to 23 car-loads of coal per day were delivered into it, each car-load holding from 12 to 20 tons;

about 23 cars would be unloaded in one day. This process of lifting, conveying and dumping the coal by means of machinery from the top of the shed to the floor below, in large masses, causes the coal to break and grind upon coming in contact with the iron conveyor, etc., and produces not only deafening noises, but clouds of coal dust.

The evidence tends to show that the locality in question is in a thickly settled portion of the city, and that there are many houses and stores near plaintiff's residence on Jefferson street, and also south of Washington street, and east and west of the other streets above named. Many of the owners and occupants of these houses and stores were put upon the witness stand, and swore that they also were annoyed and injured by the noises and coal dust in question in the use and enjoyment of their respective properties. In *Cooper* v. *Randall*, 59 Ill. 317, we held, that such testimony was admissible to show the extent and character of the injury sustained by the plaintiff, and as tending to prove that the nuisance objected to was capable of inflicting the injury complained of.

It is urged, however, by the appellants, that, by the testimony thus admitted, the nuisance was shown to have been a public one, and that a private action will not lie for injuries suffered from a public nuisance. Counsel for appellants thus state their position: "the annoyance complained of by the plaintiff is only such as he in common with the public is subjected to, and, therefore, he cannot have a private action to redress his supposed injury."

Undoubtedly the general rule is, that public or common nuisances, which are defined by Blackstone to be those "which affect the public and are an annoyance to *all* the King's subjects," can only be proceeded against by indictment, but it is also a well established rule, that, where a person sustains, by reason of a public nuisance, a special damage different from that which is common to all, he is not precluded from main-

taining his action for such damage. (Wood's Law of Nuisances, secs. 618 and 653.)

The doctrine, that special damage must be shown in order to justify a private action for injury growing out of a public nuisance, had its origin in the consideration of nuisances growing out of obstructions to highways and navigable streams. For instance, if a man dug a ditch across a public highway, the traveller would have no action for the inconvenience, which he suffered from the interruption in common with the rest of the public, but, if his horse fell into the ditch and was killed, he would thereby suffer a special damage not common to others.

The strictness of the original rule has been greatly modified since the days of Lord Coke. Recovery may be had for damages which are consequential as well as direct. (Wood's Law of Nuisances, secs. 620 and 621.) An individual, who receives actual damage from a nuisance, may maintain a private suit for his own injury, although there may be many others in the same situation. (*Lansing* v. *Smith*, 4 Wend. 10.) The doctrine now is, that a nuisance may be at the same time both public and private. The use of a steam engine in a crowded street may be a public nuisance, but, in a case where the smoke from it also injured the goods in a man's shop and made his dwelling uncomfortable, it was held to be such a private nuisance as would give him a right of action. (Idem. sec. 649.) In *Francis* v. *Schoellkoppf*, 53 N. Y. 162, it was held, that, although the stench from a tannery injured a large number of houses, yet the plaintiff, whose dwelling was made uncomfortable and almost uninhabitable, was entitled to sue for her particular injury.

In the case at bar, if the coal dust falls upon the furniture, food and clothing in appellee's house, he suffers a special damage to his own property, even though it be true that coal dust from the same coal-shed falls upon the man who passes on the street in front of his door, or upon similar articles of property in his neighbor's house. If the noise of the grinding

machinery deafen him in his own dwelling, the rest and quiet, which he is entitled to enjoy in his home, are disturbed, and he is none the less injured because the home of his neighbor is rendered unendurable from the same cause. Injury to a vested right is a sufficient special damage to maintain an action against the promoter of a public offense. (Wood's Law of Nuisances, sec. 656.) As was said in *Francis* v. *Schoellkoppf, supra,* "it is no defense for a wrong doer, when called upon to compensate for the damages sustained from his wrongful act, to show that he, by the same act, inflicted a like injury upon numerous other persons."

We, therefore, think that the court below committed no error in overruling the motion of the defendants to exclude the plaintiff's evidence, inasmuch as the plaintiff was entitled to maintain his action even though the nuisance in question could be regarded as a public one.

The next error assigned by the appellants is the refusal of the trial court to give certain instructions, which stated to the jury, in substance, that the Michigan Central Railroad Company would have had the right to erect and operate the machinery in the coal-shed, upon the alleged ground that such operation was a lawful railroad use of the right of way, and that the company had a right to license Wylie to do what it could itself thus do; that the original owner of the south half of Block 17, by his deed to the lessor of the M. C. R. R. Co., received a consideration, thereby, for all future injury to the portion of the block retained by him growing out of such lawful railroad use of the part so deeded and sold; that, therefore, appellee, holding title under such original owner, is without redress for the damages occasioned by such use. We are of the opinion that there was no error in the refusal of the instructions in question for the reasons hereinafter stated.

The charter of the Joliet and Northern Indiana R. R. Company has not been introduced in evidence, and, therefore, it does not appear whether or not that Company had any au-

thority to lease the property to the M. C. R. R. Co., and, if it did so lease it, it does not appear, in the absence of such lease and of the charter of the M. C. R. R. Co. from the record, whether or not the latter company was authorized to make the lease to Wylie. Nor does it appear, from either of the deeds above referred to, or otherwise, that the land, on which the shed stands, was conveyed to the J. and N. I. R. R. Co., or held by it, as right of way. But we will treat the case, as the counsel on both sides seem to do, as though the M. C. R. R. Co. was the lessee of the J. & N. I. R. R. Co., and as though the coal-shed stood upon the railroad right of way, and as though the appellants were authorized to use the shed and the machinery in it for the same purposes for which their lessor could have used it.

*First,* the deed from Matteson to the J. and N. I. R. R. Co. did not recite that the strip therein described was conveyed for the purpose of constructing a railroad, or for any purpose connected with the construction or use of a railroad, or for any purpose connected with the preservation, occupation and enjoyment of a railroad. It was a simple conveyance of land in fee simple without any reference to the use to which it was to be applied. When it was made, no part of the J. & N. I. railroad had been built. Moreover, the deed was executed in 1854 while the constitution of 1848 was in force. Under that constitution, compensation, in condemnation proceedings, was only awarded for the land taken, and not for damages to the land not taken. It cannot be claimed that a simple deed or grant of land for right of way, to a railroad company will be presumed to have any greater effect than a condemnation judgment. It is said that, as condemnation proceedings are presumed to consider and include all damages suffered, so deeds of rights of way are presumed to include all damages arising from a proper construction of the improvement. But it is difficult to understand how, under the constitution of 1848, where the owner only received, as the result of the con-

19—134 ILL.

demnation proceeding, compensation for the land taken and not damages to the land not taken, a deed of land to a railroad company, made when that constitution was in force, can be presumed to have been in consideration both of compensation for the land conveyed and of future damages to the land not conveyed, in the absence of anything on the face of the deed to show that the land was conveyed for any particular purpose, or that the parties had in mind any damages to accrue to other land. (*C., R. I. & P. Ry. Co.* v. *Smith,* 111 Ill. 363; *C. & E. I. R. R. Co.* v. *Loeb,* 118 id. 203.)

The position of appellants is, that the consideration of the deed from Matteson to the J. & N. I. R. R. Co. included not only the value of the strip 130 feet wide thereby conveyed, but also all damages thereafter to result from the construction and operation of the railroad to the strip 145 feet wide deeded the next day to N. D. Elwood. In *C., R. I. & P. Ry. Co.* v. *Smith, supra,* we said: "A mere conveyance of a tract of land might not give to the grantee the right to make any use of it which would injuriously affect any other land, for the law would attach the same condition as in general exists with respect to the holding of all land,—that the owner shall so use it as not to produce injury to another; but in the case before us there is the grant for this very use itself which will injuriously affect other land, and for no other use."

The doctrine announced in some of the text books, that, where land has been acquired for railroad purposes by deed or grant, as well as by condemnation, all damages to the portion of the owner's land not taken, for which an action would lie at common law, are presumed to have been considered in fixing the price, may well be applied to such a deed or grant made in this State since the constitution of 1870 went into force. That instrument provides that "private property shall not be taken, or *damaged,* for public use without just compensation." But the doctrine can certainly have no reference to a simple deed, made before the adoption of the constitution

of 1870 and containing no statement of any use which was to be made of the land conveyed. It is to be noted, that the point here discussed is, not whether there was any remedy for injury to the land not taken before the adoption of the constitution of 1870, but whether damages for such injury could be regarded as paid for by the price named in such a deed, conveying the land taken as the deed above described. We think that such could not be the effect of the deed.

*Second,* in any case where the doctrine contended for, can be applied, it only contemplates that the grantor or those holding under him shall be prevented from recovering damages for such injuries as arise from the proper construction of the road, and such as necessarily result from or attend upon its ordinary and prudent operation. Railroads are a public necessity and a public benefit. Many inconveniences and annoyances grow out of their operation which must be borne by the public. The passage of a train of cars upon the street of a city or town is necessarily attended with noise, with the emission of smoke, with detention at the crossings, etc. No recovery can be had for injuries suffered from such causes.

But a railroad company has the power to do certain things, which it has also the discretion to do in particular ways and at particular places. It needs grounds upon which it may receive and discharge its freight and passengers. It may use its right of way for such purposes. Its discharge of a certain kind of freight at one place upon its right of way may work serious injury to property owners, while its discharge of the same at another place thereon may not produce any such injury. The selection of a locality, where damages are inflicted, in preference to one where damages will not be inflicted, cannot be said to be necessary to the ordinary and prudent operation of the road.

In the present case, the company, or those authorized by it, thirty three or thirty four years after the original construction of the road, erected this coal-shed, and placed in it a new con-

trivance, worked by steam power, for unloading coal, in the heart of a city, in a locality thickly settled and surrounded by residences and stores, creating thereby grinding, grating noises, and scattering dust and dirt that destroy the comfort and injure the health of those living upon the adjoining property. Here was a new use of the right of way not contemplated at the time of the original grant, not resorted to for many years thereafter. The construction of the shed in 1888 could not have been anticipated by appellee, who built his house in 1876 and began to occupy it in 1881.

This structure, though not a nuisance *per se*, became such by reason of the particular locality in which it was situated. It is as much the duty of a railroad company as of an individual to so use its property as not to injure others. The question whether or not the coal-shed and its machinery were located in a proper place was fairly left to the jury by the instructions of the court.

In *I. C. R. R. Co.* v. *Grabill*, 50 Ill. 241, where a cattle pen, kept by the R. R. Company near the premises of the plaintiff, was the source of noxious smells, rendering such premises unwholesome and uninhabitable, it was held that such indispensable structures, even though the right existed to erect them in the heart of a city, ought to be located at such a distance from populous neighborhoods as to avoid the injurious results produced by them.

In *Cooper* v. *Randall et al.* 59 Ill. 317, which was an action for damages to plaintiff's premises arising from a flouring mill on a lot near such premises, which threw upon them chaff, dust, dirt and other impurities, the following instruction was approved: "A flouring mill is not necessarily a nuisance, nor unlawful in its use, management or purpose. A man has a right to erect a mill *in a proper place*—to run, use it, etc., in a proper manner; * * * and if said mill is *in a proper place*, used and operated in a proper manner, and without material injury to the possession or reversionary right or interest of

plaintiff, jury should find for defendants." "Material injury" was there defined to be a real and not imaginary or fanciful interference with the reasonable enjoyment of the property.

In *Whitney* v. *Bartholomew,* 21 Conn. 213, the action was for damages to plaintiff's property by reason of a carriage factory and blacksmith's shop occupied by defendant on his own land adjoining the lot on which stood the plaintiff's dwelling-house. It was shown that cinders, ashes and smoke from the chimneys of the shop were thrown upon plaintiff's house, land, clothes, etc., and that the ashes, etc., fell into her well, etc. Judgment for plaintiff was affirmed, and it was there held, that the factory and shop were not nuisances *per se,* but that "the shop was erected and the business pursued *in an improper place;*" that some things, not unlawful, become so "in respect to the time, place or manner of their performance;" that defendant was bound to use the shop, even though on his own land, so as not to injure his neighbor; "that of trades which are lawful, some may be nuisances in cities, which are harmless in the country."

*Shively* v. *Cedar Rapids, J. F. and N. Ry. Co.* 74 Iowa, 169, was an action against a railroad company to recover damages, wherein it appeared that the company built and maintained stock-yards within 60 feet of plaintiff's lot for the use of shippers over the road, and that there were emitted therefrom foul odors, which rendered plaintiff's house almost uninhabitable and endangered his health, etc. It was claimed, that the yards were necessary to the operation of the road, and that the odors could not be prevented even where the yards were properly conducted. Judgment for plaintiff was sustained, and the court said: "It is not shown that they (the odors) are unavoidable, nor does it appear that the yards might *not have been located at another place* where they would have met the necessities of the road and its patrons."

It was also left to the jury by the instructions in this case to say whether this particular mode of handling coal and un-

loading it from cars was a proper mode or not. If unloading coal in this shed with such machinery upon the company's right of way was a part of the necessary operation of the road, plaintiff could not be precluded from a recovery for injuries thereby suffered, unless such process of unloading was prudent, careful and proper.

We perceive no error in the record which would justify a reversal. The judgment of the Appellate Court is accordingly affirmed.

*Judgment affirmed.*