BY THE

## ST. LOUIS, KANSAS CITY AND SPRINGFIELD

# COURTS OF APPEALS

AT THE

## MARCH TERM, 1917.

---

## T. B. OSBORNE, Respondent, v. W. C. EYSTER, et al., Appellants.

Springfield Court of Appeals, April 2, 1917.

1. **INSTRUCTIONS: Action for Cleaning Ore on Custom Mill: Counterclaim.** Action by custom mill operator to recover for cleaning ore bearing dirt and rock under a contract with defendants who owned and operated a mine. Defendants set up by way of counterclaim that plaintiff in cleaning the ore had wasted a great part thereof and allowed it to run into the tailing pile and sludge pond. Evidence reviewed and *held* to make a clear conflict and that an instruction for defendant was justified which told the jury that if the defendant employed plaintiff to mill the dirt and plaintiff unnecessarily wasted and lost quantities of the ore, the jury should find for defendants on their counterclaim.

2. **EVIDENCE: Matters Collateral: When Improper.** Action by a custom mill operator against mine operators for cleaning ore bearing dirt and rock. Defendant mine operators counterclaimed for waste of ore in cleaning. Defendants offered to show that they took some dirt from the same pile to another mill immediately after stopping the milling of their ore by plaintiff and that the recovery was about two per cent. more than at plaintiff's mill. This was properly excluded because a substantial similiarity in the conditions covering the amount of ore recovered at other mills was not shown.

3. ———: **Collateral Matters: Discretion of Trial Court.** The admission or exclusion of testimony concerning a collateral matter or acts between strangers is left to a large extent to the discretion of the trial court.

(520)

4. ———: ———: **When Relevant.** It is the duty of the party offering such evidence to convince the trial court that the conditions are in all essential respects the same before it will be deemed relevant.

Appeal from Jasper County Circuit Court, Division Number One.—*Hon. Joseph D. Perkins,* Judge.

AFFIRMED.

*Owen & Davis* for appellants.

*Walden & Andrews* for respondent.

FARRINGTON, J.—Plaintiff recovered a judgment against the defendants for the sum of $788.58, which was the full amount sued for with interest.

The petition avers that plaintiff operated a custom mill and that he entered into an agreement with defendants to clean certain ore-bearing dirt and rock belonging to the defendants who owned and were operating a mine. The price to be paid for milling was $1.10 per ton of dirt milled—forty cents for hauling and seventy cents for cleaning. The amount claimed in the petition to have been milled was 712 tons and 400 pounds for which milling it is alleged defendants refused to pay.

Defendants answered by a general denial, and, by way of counterclaim, set up that plaintiff in cleaning said ore failed to extract the same properly and permitted large quantities, to-wit, fifteen tons of actual ore of the value of $1425, to be wasted by allowing it to go into the tailing pile, sludge pond, and waste places, and asked judgment for $1425.

The verdict of the jury was for plaintiff on his claim against the defendants, and also in plaintiff's favor on defendants' counterclaim.

Defendants have appealed, assigning error in the exclusion of certain evidence, and in the giving and refusal of instructions.

The objections urged to instructions are trivial and appellants cite no authority in support of their attack.

We are convinced there is no reversible error in the record so far as the instructions are concerned.

The exclusion of evidence offered by appellants is relied on to secure a reversal in this case, and in order to see the full force of this contention it is deemed proper to summarize the evidence produced by both parties at the trial.

The controverted point of fact is well shown by quoting defendants' instruction No. 4 which was given by the court: "The court instructs the jury that if they believe from the evidence in the case that the defendants employed the plaintiff, and that the plaintiff undertook for hire, to mill and clear for market for the defendants the ore-bearing dirt described in the evidence, and that the plaintiff in milling and cleaning and preparing for market the ore in said dirt unnecessarily suffered and permitted quantities thereof to be wasted and to go into the tailing pile, sludge pond and other waste places, and that the same was thereby by reason thereof lost to the defendants, then the jury will find the issues for the defendants on their counterclaim, and will assess their damages at such sum as will reasonably compensate them for the loss, if any, of such mineral."

The jury found the facts made an issue in this instruction against the defendants, and there is no doubt that there was substantial evidence introduced on the part of both plaintiff and defendants to have upheld a verdict for either under this instruction.

Plaintiff's evidence shows that he agreed to mill the defendants' dirt for the price named in the petition, and that his mill was as good or better than the average custom mill for the recovery of ore. That the 712 tons and 400 pounds charged for was not actually weighed, but that this weight was arrived at by agreement by weighing one load of every seven or eight and taking that as an average on which to base the weight of all. That the dirt furnished by defendants was thin ore-bearing dirt and that plaintiff called defendants' attention to this fact and advised them to stop having it milled on that account. That it is impossible to catch all the mineral in milling

it, and that tailing piles are often worked over as many as three times. That the recovery made by the plaintiff on this dirt was as good as could be made. That Cook, one of the defendants, was at the mill a greater part of the time this dirt was being milled and that he made no complaint. That finally, the recovery running so low, the defendants asked if they could send a jig man over to the mill to represent them, which was agreed to. That one Wyckoff, a jig man, came to the mill and stayed there several hours. That Cook told plaintiff afterward that Wyckoff told him that it was all right. Plaintiff's evidence was to the effect that the mill was run as it should have been. That on one occasion, which will often happen, spouts or pipes did become filled and some of the ore did run over. His evidence further shows that dirt of this character varies in the amount of recovery, often from day to day.

Defendants' evidence tended to show that they complained of the low recovery they were getting and had a jig man, Wyckoff, go to the mill who discovered ore wasting and being lost at several places. That they took some of the waste in the sludge pond and that an assayer's report on the same showed 1.65 per cent of ore. That some of the rocks after having been partly broken up, which were average rocks, were taken to an assayer and showed that the ore ran in the neighborhood of fourteen per cent. A number of defendants' witnesses swore they could tell about what dirt such as defendants were furnishing would bear in ore and that this dirt which they saw and were familiar with should bear different per cents; that is, some of the witnesses swore it should run between three and four per cent, some, between five and six per cent, and others that it would run probably higher.

The evidence, thus far, made a clear conflict, which justified the giving of defendants' instruction No. 4.

But defendants offered to show that immediately after stopping the milling of the 712 tons and 400 pounds they took some dirt from the same pile to the Swartz mill, another custom mill, and recovered between three and four per cent mineral; that about 100 tons of dirt taken

from this mine, which defendants' witnesses swore was practically the same kind of dirt that was taken to plaintiff's mill, was taken to the Swartz mill and that there was a recovery of three and four per cent; and that there was also some dirt taken from this mine, which defendants' witnesses say would run about the same as that furnished plaintiff's mill, to another custom mill, the Lone Elm, and that there the recovery was something like three to four per cent.

Plaintiff objected to this offer because under the issues the evidence sought to be introduced was irrelevant and immaterial, and the court sustained the objection and excluded the evidence. Appellants say this is reversible error.

We do not feel that we can uphold appellants' contention for the reason that the evidence offered fails to show a substantial similarity in the conditions covering the amount of ore recovered at the Swartz and Lone Elm mills. It is a matter of common knowledge and is a fact shown by the evidence in this case that the dirt taken from a mine will vary to a certain extent, and that a mill cannot and does not recover all the ore. While in this case we do not see a material difference in the construction and operation of the different mills referred to in the record, the fact that all the witnesses—who were more or less experienced in this business—testified that the dirt taken from this mine will run from three and one half to fourteen per cent is material. The difference, as shown by the offer, is less than two per cent returned by the Swartz and Lone Elm mills and that returned by plaintiff. Another fact that makes the conditions materially different is that it is shown that the dirt taken to plaintiff's mill was not actually weighed but was estimated or averaged, whereas it is not shown nor attempted to be shown how the weight of the dirt was arrived at that was taken to the Swartz and Lone Elm mills.

The evidence shows without contradiction that on two occasions previous to the milling of the dirt for which this suit is brought the plaintiff had milled ore from this same mine, at which times the return was between three

and four per cent while the return from the milling in controversy was a fraction over two per cent. This is a positive demonstration that if the ore was the same, the last milling was not what it ought to have been. The evidence was clearly in conflict on the character of the ore furnished on the several occasions, that of the plaintiff going to show that the ore for the last milling was thin and not capable of producing more than was produced, while that of the defendants was to the effect that it was capable of producing the same as had been produced in former millings. This made the issue to be found by the jury: Whether the ore milled at the various times in this mill was of the same character; and therefore rendered unimportant the offer to show the return at other millings.

The admission or exclusion of testimony of a collateral matter, or acts between strangers, is left to a large extent to the judicial discretion of the trial court. [Jones on Evidence (Horwitz Ed.), sec. 136, p. 668; 1 Wigmore on Evi., sec. 444; 2 Ency. of Evi., p. 773.]

It is the duty of the party offering such evidence to convince the trial court that the conditions are in all essential respects the same before it will be deemed relevant. [17 Cyc. 284; Riggs v. Railroad, 216 Mo. l. c. 327, 115 S. W. 969.]

One reason given for the exclusion of such character of evidence is that while logically it may tend to bear on the question at issue yet unless the facts are practically and substantially the same in two given cases such testimony tends to confuse rather than enlighten the jury and also tends to widen the scope of the investigation to proportions not in keeping with the expedition of business.

We hold that the evidence introduced by both plaintiff and defendants fails to show such a similarity of conditions as to the ore and the manner of getting at its weight as to prevent us holding that the trial court abused the discretion vested in it by rejecting the testimony.

Appellants cite four cases: Vietti v. Nesbitt (Nev.), 41 Pac. 151; Avery v. Burrall, 118 Mich. 672, 77 N. W.

272; Brierly v. Mills, 128 Mass. 291; and Cooper v. Randall, 59 Ill. 317. In three of these cases the appellate court upheld the decision of the trial court—upheld the exercise of discretion vested in the trial court on the question of admissibility. The case of Cooper v. Randall, supra, was one where the judgment of the trial court was reversed for excluding the offered testimony, yet on reading the opinion it can be seen that the conditions surrounding the transactions, the one on trial and the one offered as proof of the question at issue, are almost if not exactly identical.

The evidence introduced by plaintiff and defendants was squarely conflicting and the instructions fairly submitted the issues. We feel content in abiding by the decision of the jury and affirm the judgment. *Cox, P. J.,* and *Sturgis, J.,* concur.