ALAN DUNCAN, Plaintiff-Appellant, v. RAYMOND RZONCA *et al.*, Defendants (Hinsdale Federal Savings and Loan Association *et al.*, Defendants-Appellees).

Second District   No. 84—315

Opinion filed May 7, 1985.

Anthony M. Colantoni, of McDowell & Colantoni, of Chicago, for appellant.

D. Kendall Griffith, Joshua G. Vincent, and Hollis L. Webster, all of Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Wheaton, and Thomas J. Branit, Norton Wasserman, and Esther Joy Schwartz, all of Orner, Wasserman & Moore, of Chicago, for appellees.

JUSTICE UNVERZAGT delivered the opinion of the court:

The plaintiff, Alan Duncan, a Naperville police officer, appeals the judgment of the circuit court of Du Page County dismissing with prejudice counts III and IV of his first amended complaint at law for personal injury against defendants Hinsdale Federal Savings and Loan Association (Hinsdale Federal or bank) and Patricia A. Doerr. The court found the counts failed to state a cause of action against these respective defendants, and its judgment included the finding required by Supreme Court Rule 304(a) to permit interlocutory appeal. Supreme Court Rule 304(a), as amended April 27, 1984, effective July 1, 1984.

Plaintiff was injured on May 19, 1983, at approximately 2:17 p.m. in an automobile accident during an emergency response to a robbery alarm from Hinsdale Federal in Naperville. The plaintiff was forced to swerve his squad car in order to avoid a collision when a vehicle, owned by defendant Edward Rzonca and driven by defendant Raymond Rzonca, entered the intersection of Olesen Drive and Chicago Avenue in Naperville. The officer's car struck a telephone pole, and he sustained the injuries and damages claimed in the suit. The alarm, a false one, allegedly was activated by the defendant Doerr's three-year-old son, Charles A. Doerr.

*Inter alia*, it was alleged that between the period January 10, 1983, to the date in question, May 19, 1983, six alarms, all later discovered to be false, originated from the Hinsdale Federal facility. It was alleged that a false alarm immediately preceding the one in question occurred on May 13, 1983, about 12:37 p.m., and that it also was activated by defendant Doerr's son Charles. In each of the six false alarm instances, certain Naperville police officers, including plaintiff here, responded, assuming that a robbery was in progress at the facility.

Plaintiff's complaint alleged that on the date and at the time in

question, May 19, 1983, 2 p.m., Doerr was advised by one of Hinsdale Federal's employees, Carol Crowell, that the last time Doerr was in the bank her son had set off the silent alarm, causing the Naperville police to respond. Doerr was requested by Crowell to keep Charles away from the back of her desk where the alarm button, exposed and facing outward from the rear of the desk, was located in the upper right-hand corner of the desk's knee-space. Shortly thereafter, Crowell left Doerr's presence, and another bank employee, Stephen A. Shuman, observed Doerr's son behind Crowell's desk, at or near said alarm button, and directed him to come to the front of the desk. It was alleged the boy had already pushed the button, however, and the alarm was activated. Plaintiff was injured while responding to that false alarm.

Plaintiff's count III against Hinsdale Federal alleged it "then and there owned, operated, maintained and/or controlled or had the duty to own, operate, maintain and/or control a certain banking facility at 1490 East Chicago Avenue in the City of Naperville ***," and alleged it was:

"then and there guilty of one or more of the following careless and negligent acts and/or omissions which were a proximate cause of the aforesaid collision and the injuries sustained by the plaintiff:

a) Allowed said silent alarm button to be open, exposed and unguarded when they knew the defendant's son had activated the alarm on a prior occasion.

b) Failed to have an adequate safeguard to prevent children from pushing the silent alarm button when they knew the defendant DOERR's son Charles had activated the alarm on a prior occasion.

c) Failed to prevent children from gaining access to the silent alarm button when they had prior notice that defendant DOERR's son Charles so activated the alarm on a prior occasion.

d) Failed to institute appropriate safeguards to prevent defendant DOERR's son Charles from gaining access to the silent alarm button when they knew he had set off the silent alarm on a prior occasion.

e) Failed to determine whether or not the defendant DOERR's son Charles had set off the alarm on May 19, 1983 when they had observed him at and/or near said button.

f) Failed to notify the Naperville Police Department, and

especially the plaintiff herein, that said alarm was falso [*sic*] when they knew said failure could create a hazardous and dangerous condition for police officers responding to said call, including the plaintiff herein.

g) Failed to prevent false alarms from being reported to the Naperville Police Department when it knew or should have known that said failure could create a hazardous and dangerous condition for police officers responding to said alarm, including plaintiff herein."

Plaintiff's count IV against Doerr alleged she was advised about the prior false alarm activated by her son on May 13, and was asked to control her son and keep him away from the back of Crowell's desk. It was further alleged Doerr permitted her son "to run around the premises, including the back of Ms. Crowell's desk, at which time he activated the aforementioned silent alarm." It was further alleged that Doerr:

"was then and there guilty of one or more of the following careless and negligent acts and/or omissions which were a proximate cause of the aforementioned collision and injuries sustained by the plaintiff:

a) Failed to prevent her son, CHARLES DOERR, from activating the silent alarm when she knew that he had done so on May 13, 1983.

b) Failed to determine whether her son had activated the silent alarm.

c) Failed to properly supervise the conduct of her son, CHARLES DOERR.

d) Failed to notify the Naperville Police Department and the plaintiff that said alarm was false on May 19, 1983.

e) Failed to prevent a false alarm from being reported to the Naperville Police Department when she knew or should have known that said failure could create a hazardous and dangerous condition for police officers responding to said alarm, including plaintiff herein."

The court granted Hinsdale Federal's motion to dismiss because it found the "two intervening acts, one of the parent-child control or lack thereof, and secondly, the intervening conduct of the plaintiff and the driver defendant in this particular case" made it "just too far out from foreseeability as well as violating the concept of proximate cause."

The court granted Doerr's motion to dismiss, finding that:

"Insofar as the mother and the control is concerned, I think

that this is one step closer, but once again on the issue of foreseeability, proximate cause, intervening cause, I don't believe in either instance the plaintiff in this case can make out an action predicated that the negligence, if any, of either of the defendants is a, and I do emphasize the word 'a', proximate cause of the injuries, which of course is what it is all about."

Continuing, the court commented:

"There may very well be some contractual duty or contractual liability between the bank and the City of *** Naperville.

But I don't see that that duty or that responsibility, insofar as multiple activation of a silent alarm, bleeds over and is the kind of duty that is involved insofar as this action is concerned."

The central issue is whether the court erred in determining that counts III and IV failed, respectively, to state a cause of action in negligence against defendants Hinsdale Federal and Patricia Doerr. This appeal focuses first on the question whether the plaintiff's complaint alleged facts sufficient to establish a duty on the part of each of these two defendants owed to the plaintiff and, if so, whether the breach of the respective defendant's alleged duty proximately caused the plaintiff's injury.

Common to this court's review of each of the dismissals at bar are several general principles. First, in order to adequately state a cause of action for negligence, the plaintiff's allegations must establish the existence of a duty of care owed by defendant to plaintiff, a breach of that duty, and an injury proximately resulting from that breach. (*Curtis v. County of Cook* (1983), 98 Ill. 2d 158.) It is not sufficient that a complaint merely allege a duty; the plaintiff must allege facts from which the law will raise a duty. (*Bescor, Inc. v. Chicago Title & Trust Co.* (1983), 113 Ill. App. 3d 65.) The existence of a legal duty is a question of law to be determined by the trial court. (*Keller v. Mols* (1984), 129 Ill. App. 3d 208; *Zimmermann v. Netemeyer* (1984), 122 Ill. App. 3d 1042; *Mieher v. Brown* (1973), 54 Ill. 2d 539.) The granting of a motion to strike and dismiss is within the sound discretion of the trial court. *Knox College v. Celotex Corp.* (1981), 88 Ill. 2d 407.

On appeal from orders allowing motions to dismiss, all well-pleaded facts within the complaint must be regarded as admitted and true, and all reasonable inferences which can be fairly drawn from the facts alleged must also be considered as true. (*Wilczynski v. Goodman* (1979), 73 Ill. App. 3d 51.) An appeal from an

order dismissing a complaint for failure to state a cause of action preserves for review only the question of the complaint's legal sufficiency; *i.e.*, whether the plaintiff has stated a cause of action. (*Sorrentino v. Waco Scaffolding & Shoring Co.* (1976), 44 Ill. App. 3d 1055, 1059.) In determining the propriety of dismissal of an action, the appellate court is concerned on review only with questions of law presented by the pleadings and the court tests the sufficiency of the complaint by ascertaining whether the essential elements of a cause of action were alleged. (*Beese v. National Bank of Albany Park* (1980), 82 Ill. App. 3d 932.) The reviewing court should interpret facts alleged in the complaint in the light most favorable to plaintiff on appeal from the granting of a motion to dismiss. (*Business Development Services, Inc. v. Field Container Corp.* (1981), 96 Ill. App. 3d 834, 836.) A motion to dismiss for failure to state a cause of action should be affirmed on appeal only where no set of facts can be proved under pleadings which will entitle plaintiff to relief. (*Griffis v. Board of Education* (1979), 72 Ill. App. 3d 784.) Further, regardless of the reason for dismissal of the complaint, the court's order may be sustained on any basis found in the record. *Goldberg v. Goldberg* (1981), 103 Ill. App. 3d 584, 587.

## DUTY

HINSDALE FEDERAL

██ Plaintiff acknowledges the duty owed by Hinsdale Federal is not an express one, but asserts that facts sufficient to raise a legal duty under a traditional duty analysis have been alleged, and he was within the scope or range of protection of that duty.

Hinsdale Federal construes plaintiff's allegations initially as a complaint that it was negligent in its control, use, and maintenance of its banking facility in that it failed to remedy a dangerous condition and control the use of its premises by others who were in the bank. As such, it argues that under the law governing premises liability, it owed no duty to plaintiff to prevent injury to him while he was on his way to the bank. Alternatively, it argues it owed no duty under traditional analysis as urged by plaintiff.

Review of the plaintiff's first amended complaint and the cases cited by the parties causes us to conclude that the facts alleged in count III raised a duty of care owed by Hinsdale Federal to the plaintiff.

A duty is an obligation imposed by the law upon a person which requires the person to conform to a certain standard of conduct for

the protection of another against an unreasonable risk, and whether under the facts of a case such a relationship exists between two parties as to require that legal obligation to be imposed upon one for the benefit of the other is a question of law to be determined by the court. (*Barnes v. Washington* (1973), 56 Ill. 2d 22, 26; *Zimmermann v. Netemeyer* (1984), 122 Ill. App. 3d 1042, 1045.) "[T]he legal concept of 'duty' is not sacrosanct in itself, but only an expression of the sum total of those considerations of policy which lead the law to say that the particular plaintiff is entitled to protection. [Citations.]" (*Nelson v. Commonwealth Edison Co.* (1984), 124 Ill. App. 3d 655, 662.) The judge's function in a duty determination involves complex considerations of legal and social policies (124 Ill. App. 3d 655, 662); the imposition and scope of a legal duty is dependent not only on the factor of foreseeability but includes consideration of the likelihood of injury, the magnitude of the burden of guarding against it, and the consequences of placing that burden upon the defendant. *Zimmermann v. Netemeyer* (1984), 122 Ill. App. 3d 1042, 1055; *Schoondyke v. Heil, Heil, Smart & Golee, Inc.* (1980), 89 Ill. App. 3d 640, 644; *Lance v. Senior* (1967), 36 Ill. 2d 516, 518.

■ Hinsdale Federal argues the facts alleged show it owed no duty to plaintiff because his injury occurred while he was off the bank's premises, on his way to the bank, when the accident happened. It relies on *Zimmermann v. Netemeyer* (1984), 122 Ill. App. 3d 1042, in support of its argument, and contends the instant case is distinguishable from *Orrico v. Beverly Bank* (1982), 109 Ill. App. 3d 102, because there was no "special relationship" between itself and the plaintiff.

We find *Zimmermann* distinguishable, however, and agree with the plaintiff's argument that the facts alleged do give rise to a special relationship of the type found in *Orrico* on which the duty of the bank there was predicated.

In *Zimmermann*, a patron left the defendants' tavern in Albers, and entered his car, which was parked "head-in" in the parking lot. Without his headlights on and as a maneuver made necessary by the size and location of the defendants' parking lot, he backed his car onto Route 161 and into the path of the car in which plaintiff was riding, thus causing a collision in which plaintiff was injured. The trial court dismissed count II of the plaintiff's complaint, finding that no duty was owed by the defendants to the plaintiff, and the appellate court affirmed.

Preliminarily, the court noted that it was unnecessary to determine whether the plaintiff was an invitee, licensee, or trespasser be-

cause the collision did not occur on defendants' land. In a notable analysis of the duty issue, the court in *Zimmermann* deduced that policy considerations form the true basis of all duty decisions by Illinois courts, and that when a genuine analysis of the duty issue is required, the "foreseeability of harm" factor has been readily played down or disregarded altogether by the courts. (*Zimmermann v. Netemeyer* (1984), 122 Ill. App. 3d 1042, 1048, 1050.) The court acknowledged that the policy basis of duty is necessarily a nebulous and ill-defined area of the law:

"It is a reflection of the needs, the wishes and the tolerances of society as determined by the court as it faces the duty issue. The court's perceptions of duty in negligence cases will change as society changes. The true essence of the process of determining duty is revealed in the fact that different judges, different courts, can justifiably reach different conclusions on the existence of a duty from a consideration of the same set of facts." 122 Ill. App. 3d 1042, 1051.

The *Zimmermann* court concluded that although the accident was a foreseeable consequence of the tavern patron's action, the defendants were under no duty to protect travelers on the highway—such as the plaintiff—from injury which results from a collision that occurs entirely within the confines of the highway. Integral to its conclusion were the facts that the collision did not occur upon the defendants' land, and no condition of the land, no structure of any kind upon the land, and no activity conducted upon the land was alleged to have been a contributing cause of the collision. Nothing on the land obscured the tavern patron's view of oncoming traffic, and the size of the defendants' parking lot was considered to be of no consequence since the same result could have been obtained even if the lot had been a larger one. Further, the patron's actions in parking and backing the car were legally performed in compliance with the relevant traffic statutes.

Defendant's argument here that it owed no duty to plaintiff because he was not on the premises but merely on his way to the premises ignores the fact the plaintiff here, unlike the plaintiff in *Zimmermann,* did have a connection with the bank. Plaintiff was proceeding with all due dispatch to the bank for the sole reason that the silent alarm had been activated, signalling that a robbery was in progress. Plaintiff's count III alleged negligence in the activation of the false alarm due, *inter alia,* to the physical location and condition of the alarm and the failure of the bank to prevent unauthorized access to the alarm. In that sense, the "condition" of the land and the

"activity conducted" on the land were alleged to have been a contributing cause of the collision, thus distinguishing *Zimmermann.*

Admittedly, it is quite foreseeable that a police officer responding to an emergency situation of any type presents an inherent risk of harm. However, the societal and policy considerations which require that that risk of harm be borne, albeit regretfully, in order to advance the protection of society and its property as a whole cannot similarly require that the burden of that risk be borne when no purpose is served thereby, and when the need to undertake the risk could have been avoided by the exercise of due care. If silent alarm systems have any social utility at all, it is that they may be used safely to summon aid when persons and property are with good reason thought to be in jeopardy.

Although Hinsdale Federal argues the plaintiff had no "special relationship" with it which would give rise to a duty on its part as in the *Orrico* case (*Orrico v. Beverly Bank* (1982), 109 Ill. App. 3d 102), it is undisputed that plaintiff was a police officer, and that the police had the duty at all times to respond—unquestioningly and immediately—to the alarm when activated. *Orrico* involved a cause of action for the wrongful death of plaintiff's son. He had a history of several commitments to various mental institutions, and he was receiving social security benefits for mental disability. Plaintiff had begun proceedings for appointment of a conservator for him, and she was appointed temporary conservator to collect. She delivered a copy of the order to the bank which, for various reasons, failed to recognize or honor the order. Despite plaintiff's expression of concern about what would happen to her son if he were given a large sum of money, the bank permitted him to withdraw $2,100. Plaintiff's son's body was found about seven hours later, with no money found on his person, and with a gunshot wound at the back of his head.

In finding there that the bank owed plaintiff's son a duty, the court rejected the idea of duty circumscribed by a landowner's duty to warn or make safe dangerous conditions on the premises, and the idea that the scope of its duty was limited by privity to plaintiff herself as her son's conservator. Instead, the court found that the case was governed by the more general principle that a defendant owes a duty not to increase foreseeable risk of harm to another as dictated by consideration of the relationship between the parties, the gravity and foreseeability of the harm, the utility of the challenged conduct and the burden of guarding against the injury. (*Orrico v. Beverly Bank* (1982), 109 Ill. App. 3d 102, 105-06.) The duty owed by the

bank was found not to rest on plaintiff's son's status as an invitee but, rather, to have stemmed from the tripartite relationship of plaintiff's son, plaintiff as temporary conservator, and the bank, which held the funds. The court found the bank's conduct in paying out the funds to the plaintiff's son in contravention of her demand that he not be allowed to make any transaction undermined the societal interests protected by devices such as conservatorships and guardianships.

Here, likewise, we believe the allegations of count III and the inferences reasonably drawn therefrom gave rise to a legal duty on the part of the bank which was owed to the plaintiff, which duty was not negated by the fact the injury to the plaintiff occurred off the actual premises of the bank.

Hinsdale Federal's alternate argument that it owed plaintiff no duty under traditional common law principles of negligence is unpersuasive.

■ Defendant argues only hindsight could have allowed it to foresee that injury would result from its location of the silent alarm button in the knee space of the customer service desk, or that failure to take physical custody of Charles Doerr or keep him under control would result in injury. It asserts that the test of foreseeability must be met first before policy considerations are weighed, and when the plaintiff has failed to establish the foreseeability of the harm, no duty on the part of the defendant may be said to have arisen.

We agree with plaintiff that the defendant has placed undue emphasis on foreseeability as a "make or break" factor insofar as the court's duty determination is concerned. As plaintiff asserts, "the existence of a legal duty is not dependent on the factor of foreseeability alone, but includes consideration of public policy and social requirements," and that the question of duty is one which is heavily based upon public policy considerations. In support, plaintiff correctly cites *Zimmermann v. Netemeyer* (1984), 122 Ill. App. 3d 1042, *Bloomingdale State Bank v. Capitol Bank* (1983), 116 Ill. App. 3d 132, *Illinois Housing Development Authority v. Sjostrom & Sons, Inc.* (1982), 105 Ill. App. 3d 247, and *Mieher v. Brown* (1973), 54 Ill. 2d 539. The appropriate role of foreseeability was addressed in this court's opinion in *Nelson v. Commonwealth Edison Co.* (1984), 124 Ill. App. 3d 655. There, this court considered that while the role of the foreseeability factor—especially in the context of duty—was still not entirely clear, "the imposition and scope of a legal duty is dependent not only on the factor of foreseeability (*Cunis v. Brennan* (1974), 56

Ill. 2d 372, 375) but involves other considerations, including the magnitude of the risk involved in defendant's conduct, the burden of requiring defendant to guard against that risk, and the consequences of placing that burden upon the defendant. See *Renslow v. Mennonite Hospital* (1977), 67 Ill. 2d 348; *Barnes v. Washington* (1973), 56 Ill. 2d 22, 29; *Lance v. Senior* (1967), 36 Ill. 2d 516, 518; *Bloomingdale State Bank v. Capitol Bank* (1983), 116 Ill. App. 3d 132, 135." (*Nelson v. Commonwealth Edison Co.* (1984), 124 Ill. App. 3d 655, 662-63.) Continuing, the court concluded that:

> "While foreseeability is thus a proper matter for a court to consider in making its duty determination, the sounder approach would be to recall that the duty issue is broad in its implication and it is only the jury's negligence determination which need be strictly confined to the facts of the particular case. [Citations.] In other words, foreseeability is a determinative consideration only where a particular occurrence is so extreme that, as a policy decision, it would be unwise to require defendant to guard against it." 124 Ill. App. 3d 655, 663.

Accordingly, foreseeability here would be determinative as to the duty issue only if it could be said that the particular occurrence here was so extreme, that as a policy decision, it would be unwise to require the defendant to guard against it.

Contrary to defendant's argument that only "hindsight" could have made the plaintiff's injury foreseeable, judgment of whether the harm was legally foreseeable takes into consideration what was apparent to the defendant at the time of the now-complained-of conduct. (*Schoondyke v. Heil, Heil, Smart & Golee, Inc.* (1980), 89 Ill. App. 3d 640, 644; *Cunis v. Brennan* (1974), 56 Ill. 2d 372, 376.) Plaintiff's allegations—taken as true for purposes of the motion to dismiss—established that six false alarms were activated at the bank during the period January 10, 1983, to May 19, 1983. The one immediately before the one in question took place six days earlier under virtually identical circumstances and involving the same bank employee, minor child, and the child's mother. The police responded to each alarm assuming that a robbery was in progress, but in each case it was a false alarm. It may be inferred that the emergency response of the police in each instance created an appreciable risk of harm in that in order to effectively respond to the alarm, the officer or officers would necessarily have to proceed as quickly as possible to the scene. This, in turn, implies traveling by car at high speed through numerous intersections in a relatively densely populated community during daytime hours. Defendant correctly asserts the

police have the right to assume other drivers will comply with the applicable traffic regulations and yield to the emergency vehicle. (*Roberts v. Cipfl* (1942), 313 Ill. App. 373.) Nonetheless, there are many situations in which the standard of care exercised must take into account " 'that occasional negligence which is one of the ordinary incidents of human life and therefore to be anticipated.' " (Prosser, Torts sec. 33, at 171 (4th ed. 1971).) Accidents involving emergency vehicles are not so uncommon as to be unforeseeable, and most of them undoubtedly involve some degree of negligent conduct. Prosser also notes that as the gravity of the possible harm increases, the apparent likelihood of its occurrence need be correspondingly less. Prosser, Torts sec. 31, at 147 (4th ed 1971).

Hinsdale Federal argues that the recognizable risk of harm, if any, created by its conduct was not an unreasonable risk of harm which would give rise to a duty to guard against it. Defendant notes the risks inherent in police response to an emergency alarm are the same whether the alarm is real or false, and thus the risk of harm to plaintiff was not an unreasonable risk. In support, it cites *Fancil v. Q.S.E. Foods, Inc.* (1975), 60 Ill. 2d 552. The duty analysis in *Fancil*, however, was based on the officer's status as an invitee, present on the storeowner's property during a routine security check, not in response to an alarm actively transmitted from the premises, as was the case here. The plaintiff in *Fancil* asserted that a duty should be placed on an owner to take steps to protect invitees from foreseeable criminal acts committed by third parties. The court there determined, however, that the risk to which the decedent in that case was subjected because of the conditions that existed upon defendant's premises was the same risk which every police officer encounters while conducting security checks in both residential and commercial areas; hence, the danger was not an unreasonable risk.

Plaintiff contends that even if the area in *Fancil* had been illuminated, the officer and the offender nevertheless would still both have been present and the risk to the officer would have been the same. To the contrary here, plaintiff points out defendant's negligent conduct resulted in the alarm's being sounded falsely, thus actively placing him in a position of risk by necessitating he respond in an emergency—and potentially hazardous—mode to an emergency situation which, in fact, never existed. Plaintiff views the risk thusly created as unreasonable since no valid or excusable reason for the alarm's being sounded existed. We note here that plaintiff's complaint not only alleged the defendant failed to prevent the activation

of the false alarm, but failed as well either to ascertain whether the alarm had been activated or to notify him that the alarm was false.

In sum, we conclude the risk of harm to the plaintiff by virtue of defendant's conduct was an appreciable one, and was not so unforeseeable as to render it unwise to require the defendant to guard against it.

■ Other factors to be considered in determining whether the defendant owed a duty to the plaintiff is the magnitude of the defendant's burden in reducing the risk of harm. The burden on the bank would have been minimal, and it could easily have kept inaccessible to the public the rear of the desk where the alarm was located, otherwise relocated the button, or kept a more watchful eye on the boy. The allegations of the complaint which indicate that the bank employee shifted responsibility for keeping the boy away from the alarm to the mother would not relieve the bank of its duty to exercise a reasonable standard of care for the plaintiff's protection, but would go to whether a breach of that duty resulted from the shift of responsibility. (See Prosser, Torts sec. 33, at 176-77 (4th ed. 1971).) Certainly it would not be difficult to determine a location for the alarm button which would be equally as safe from unauthorized, inadvertent or intentional activation as it would be accessible for authorized use. The very nature of a silent alarm demands that it be used only to signal the most dire circumstances with the most furtive of movements. Although the reason for the other four of the six false alarms alleged here is not known, it seems apparent that there is either a problem with the alarm system or simply with the location of the button. Logic, if not duty, suggests a change is in order.

Alternatively, the burden of paying particular heed to the whereabouts of a child who was in close proximity to the location of the alarm button for the time it takes the child's adult companion to complete a banking transaction does not seem undue. Actually, the monitoring of children in that area presented no problem until the bank employee seated at the desk got up and left. Moving the button to a location which would be secure from the public at all times, and not only when attended by a bank employee, would obviate the need for any monitoring at all. Failing that, the time period involved here is not so long as to create an undue burden on the bank by requiring that it keep children away from the button.

Likewise, the consequences of placing the burden of guarding against the risk of harm on the defendant in this case does not appear to involve extraordinary cost or problems. No doubt a bank

charged every day with the safekeeping of the property of its customers can be expected to handle the consequences involved in securing a safe location for a silent emergency alarm button.

In sum, we conclude the allegations of count III of the plaintiff's complaint were sufficient to raise a duty at law owed to the plaintiff by the defendant Hinsdale Federal.

PATRICIA DOERR

Plaintiff argues the facts alleged in count IV of his amended complaint raised a duty on the part of Doerr to supervise the activities of her son as that duty is set forth in section 316 of the Restatement (Second) of Torts (1965). Therefore, plaintiff contends count IV was improperly dismissed. Doerr argues in response that she owed no duty by virtue of the rule of parental nonliability and the "fireman's rule."

Section 316 of the Restatement (Second) of Torts provides:
"Sec. 316. Duty of Parent to Control Conduct of Child
A parent is under a duty to exercise reasonable care so to control his minor child as to prevent it from intentionally harming others or from so conducting itself as to create an unreasonable risk of bodily harm to them, if the parent
(a) knows or has reason to know that he has the ability to control his child, and
(b) knows or should know of the necessity and opportunity for exercising such control."

Plaintiff urges the allegations of count IV and the inferences reasonably drawn from them show the child was with the mother and that he was three years old. Consequently, it may be inferred the mother knew she had the ability and opportunity to control her child. Further, the need to control him was clear. Bank employee Carol Crowell informed Doerr on May 19 of the false alarm that was activated by her son six days earlier and which caused the police to respond. She advised Doerr to control her son and to keep him away from the back of her desk.

Doerr first asserts that it has long been the rule in Illinois that parents are not liable for the torts of their children merely because of that relationship. This is true (*White v. Seitz* (1930), 342 Ill. 266), and plaintiff does not dispute the rule. Plaintiff points out, however, that he is not urging Doerr was somehow vicariously liable for her son's conduct; rather, that she was independently liable to plaintiff for failing to control the activities of her son which, in turn, caused the harm. Plaintiff points out section 316 of the Restatement does

not amount to automatic imposition of liability once the relationship of parent and child is established. Defendant Doerr argues the only exception to the rule of parental nonliability is the one afforded by the legislature in the Parental Responsibility Law. Ill. Rev. Stat. 1983, ch. 70, par. 51 *et seq.*

It seems clear that the liability imposed by the Parental Responsibility Law is not applicable to this cause, and is limited in its scope to addressing the problem of juvenile misconduct. (*Vanthournout v. Burge* (1979), 69 Ill. App. 3d 193.) On the other hand, and contrary to Doerr's position here, the court in *Wintercorn v. Rybicki* (1979), 78 Ill. App. 3d 179, 182, acknowledged that although the Illinois Supreme Court had not officially adopted section 316 of the Restatement, that section was implicitly accepted in *Cooper v. Meyer* (1977), 50 Ill. App. 3d 69, as the basis upon which a cause of action in tort may be stated. The *Cooper* court found, however, that the facts of the case before it did not state a valid cause of action, in part because there was no allegation the defendant had either knowledge of the need to exercise control, nor in fact that defendant there had the opportunity for control, since he was not home at the time of the incident. In contrast, the facts alleged in the instant complaint give rise to a duty on the part of Doerr precisely as provided in section 316. Under the facts alleged, defendant Doerr had both the knowledge of the need to control Charles, and the opportunity to do so.

Dean Prosser notes that liability for the torts of the family may be based upon the personal negligence of the parent, in that a parent has a special power of control over the conduct of the child which the parent is under a duty to exercise reasonably for the protection of others. No liability devolves upon the parent, however, unless the parent has notice of a specific type of harmful conduct, and an opportunity to interfere with it. Prosser, Torts sec. 123, at 872-73 (4th ed. 1971).

We conclude the allegations of plaintiff's count IV were sufficient to give rise to a duty on the part of defendant Doerr under section 316 of the Restatement (Second) of Torts (1965).

We also conclude count IV sufficiently alleges a duty owed by defendant Doerr to plaintiff under a traditional duty analysis; *i.e.*, consideration of public policy and social requirements, foreseeability, the likelihood of injury, the magnitude of placing the burden of guarding against the injury on the defendant, and the consequences of placing that burden on the defendant.

It bears repeating here that:

" '[D]uty' is not sacrosanct in itself, but only an expression of the sum total of those considerations of policy which lead the law to say that the particular plaintiff is entitled to protection.

\* \* \*

No better general statement can be made, than that the courts will find a duty where, in general, reasonable men would recognize it and agree that it exists." Prosser, Torts sec. 53 at 325-26, 327 (4th ed. 1971).

As was true of Hinsdale Federal, the likelihood of injury to the plaintiff was significant and not so "freakish" as to be an unforeseeable consequence of Doerr's failure to conform to a reasonable standard of care. The risk of harm to which the plaintiff was exposed as a result of defendant's negligence was an unreasonable risk of harm which required the defendant to guard against it. A police officer responding to an emergency is subject to risk of harm every day, but society is willing to bear that risk in light of the social need served. The risk becomes socially intolerable and unreasonable when no social need for it exists, particularly when the means of guarding against the risk are eminently available and easily accomplished. Defendant Doerr need only have controlled her three-year-old son for the short time she was in the bank, and then only in that one particular area of the bank. She had actual knowledge of the earlier result of her son's activities and had the opportunity to prevent a repetition on the day in question.

Doerr additionally argues that the risk which plaintiff was exposed to was the risk normally associated with the function of his employment. Since the concept of duty imposes an obligation to prevent only "unreasonable" risks, she concludes she owed plaintiff no duty, and that her conclusion finds support in the "fireman's rule."

The fireman's rule has been interpreted as imposing a duty of reasonable care on landowners or occupiers to prevent injury to firemen which might result from a cause independent of the fire, but no duty to prevent injury resulting from the fire itself. (*Court v. Grzelinski* (1978), 72 Ill. 2d 141, 147-48.) A similar result regarding policemen was reached in *Fancil v. Q.S.E. Foods, Inc.* (1975), 60 Ill. 2d 552.

A portion of Doerr's argument with regard to risk assumed by one who knowingly and voluntarily confronts a hazard is drawn from the dissent in that case and, as such, is unsupported by precedent.

As noted in *Grzelinski*, the fireman's rule is circumscribed by its

limited context of landowner/occupier liability, and cannot be expanded to a free-floating proposition that a fireman cannot recover for injuries resulting from risks inherently involved in fire fighting. (*Court v. Grzelinski* (1978), 72 Ill. 2d 141, 148.) Plaintiff here was not injured in the course of a robbery of the bank. He was injured in a collision responding to an allegedly negligent activated false alarm. Doerr argues that imposing the duty sought here would have the effect of rendering everyone who summons a police officer liable for his injuries, regardless of whether the call was mistaken or well-founded. The duty here, however, relates only to liability for negligent conduct, not innocent or intentional conduct. Persons who intentionally activate false fire alarms, or make false reports to peace officers that an offense has been committed, are criminally liable. (Ill. Rev. Stat. 1983, ch. 38, pars. 26–1(a)(2), (4).) Plaintiff rejects Doerr's assertion that the fact the alarm was false in this case is of no consequence. Plaintiff asserts it is the very fact of the alarm's falsity which renders the risk to which he was exposed by defendant's negligence an unreasonable risk. We agree with plaintiff on that point. As Prosser explains:

> "The idea of risk necessarily involves a recognizable danger, based upon some knowledge of the existing facts, and some reasonable belief that harm may follow. A risk is a danger which is apparent, or should be apparent, to one in the position of the actor. The culpability of the actor's conduct must be judged in light of the possibilities apparent to [her] at the time, and not by looking backward 'with the wisdom born of the event.' ***.
>
> In the light of the recognizable risk, the conduct, to be negligent, must be unreasonable. Nearly all human acts, of course, carry some recognizable but remote possibility of harm to another. No man so much as rides a horse without some chance of a runaway, or drives a car without the risk of a broken steering gear or a heart attack. But these are not unreasonable risks. Those against which the actor is required to take precautions are those which society, in general, considers sufficiently great to demand them." Prosser, Torts sec. 31 at 146 (4th ed. 1971).

All parties have acknowledged that police emergency response presents a recognizable risk of harm not only at the scene of the crime, but on the way to the scene of the crime. Clearly, more serious injury may result from a collision in which even only one vehicle is traveling at a high speed. Balanced against the probability and

gravity of the risk is the utility of the conduct involved, *i.e.*, speeding to the scene of a crime in order to protect life or property. The risk of collision is reasonable and worthwhile when it is borne in furtherance of that objective; when no need for protection exists, speeding is unjustified and an unreasonable risk.

In sum, we believe counts III and IV of the plaintiff's amended complaint allege sufficient facts to raise a duty on the part of both Hinsdale Federal and Patricia Doerr.

### PROXIMATE CAUSE

■■■ Plaintiff asserts the question of proximate cause was one of fact for the jury, and that it was inappropriate for the court to find as a matter of law that the negligence of the defendants was not the proximate cause of his injury.

*Merlo v. Public Service Company* (1942), 381 Ill. 300, 318, establishes that "[w]hat constitutes the proximate cause of an injury in a particular case *** can only be a question of law when the facts are not only undisputed but are also such that there can be no difference in the judgment of reasonable men as to the inferences to be drawn from them."

Defendants urge that such is the case here and, therefore, the court could determine as a matter of law that their alleged negligent conduct did nothing more than furnish a condition, making the injury possible. *Boylan v. Martindale* (1982), 103 Ill. App. 3d 335, 341.

We disagree that the inferences to be drawn from the facts alleged here are so undisputed as to permit the court to determine as a matter of law what constituted the proximate cause of the plaintiff's injury here. It is clear that in addition to proximate cause, the question of whether a duty has been breached is also a factual matter for the jury to decide. (*Curtis v. County of Cook* (1983), 98 Ill. 2d 158, 163.) The question of defendants' negligence becomes a matter of law only where reasonable men of fair understanding agree that defendant was guilty of negligence. (*Agnello v. Puzzo* (1982), 110 Ill. App. 3d 913.) There can be no recovery in tort for negligence unless the defendant has breached a duty owed to plaintiff. *Morgan v. Dalton Management Co.* (1983), 117 Ill. App. 3d 815.

Reasonable men could differ as to the inferences to be drawn from the facts alleged insofar as it may be inferred that the bank's shift of its responsibility for control of the child to the child's mother either did or did not amount to an exercise of due care for plaintiff's benefit. Hinsdale Federal suggests it was not negligent for the reason the child was accompanied by his mother. Further, without more evidence,

reasonable men may differ as to whether either defendant's failure to warn the police department about the false alarm or to ascertain whether the button had been pushed constituted a breach of the duty owed plaintiff, since the extent of either defendant's knowledge and observation of the boy's activities is not certain.

Under these circumstances, we believe the court erred in determining the issue of proximate cause as a matter of law, and that counts III and IV should not have been dismissed. See *Gossett v. Burnett* (1968), 251 S.C. 548, 164 S.E.2d 578.

■■ ■ We also find merit in plaintiff's counterargument to defendants' assertions that their alleged negligence was only a condition to, and not a cause of, plaintiff's injury. Noting that the distinction between cause and condition is now almost entirely discredited, Prosser states:

> "So far as it has any validity at all, it must refer to the type of case where the forces set in operation by the defendant have come to rest in a position of apparent safety, and some new force intervenes. But even in such cases, it is not the distinction between 'cause' and 'condition' which is important, but the nature of the risk and the character of the intervening cause." (Prosser, Torts sec. 42, at 248 (4th ed. 1971).)

See also *Orrico v. Beverly Bank* (1982), 109 Ill. App. 3d 102, 108; *Reed v. Danville Concrete Products Co.* (1981), 102 Ill. App. 3d 205, 207.

The "forces set in operation" here, of course, were the alleged negligent activation of a false alarm. Those forces would "come to rest in a position of apparent safety" only when the risk of harm to the plaintiff created by the defendants' alleged negligence had passed; *i.e.*, when plaintiff arrived safely at the bank. The nature of the risk created by the defendants' alleged negligence was the danger that the responding emergency vehicle would be involved in a collision; when Rzonca's car caused the plaintiff to swerve to avoid that very risk, the so-called condition may be viewed as having done quite as much to bring about the harm to the plaintiff as did the intervening cause, the Rzonca car.

The judgment of the circuit court of Du Page County is reversed, and the cause remanded for further proceedings.

Reversed and remanded.

REINHARD and STROUSE, JJ., concur.