DAVID SCHMIDT, Plaintiff-Appellant, v. JEFFREY WASHINGTON, Defendant (Pyramid Construction Corporation *et al.*, Defendants-Appellees).

Second District   No. 2—98—0567

Opinion filed July 15, 1999.

Mary Jo Kelly, of Wheaton, for appellant.

James K. Horstman, Daniel K. Cray, Michael J. Pacer, and Lloyd E. Williams, Jr., all of Williams & Montgomery, Ltd., of Chicago, for appellees.

JUSTICE McLAREN delivered the opinion of the court:

Plaintiff, David Schmidt, appeals from the trial court's order granting the motion to dismiss in favor of defendants Pyramid Construction Corporation (Pyramid) and Aurora Woodlands Associates (Woodlands). We affirm.

Plaintiff is an Aurora police officer who was injured as he attempted to assist in the arrest and transportation of defendant Jeffrey Washington at Woodlands Apartments, which was allegedly owned, operated, managed, maintained, and controlled by Pyramid and/or Woodlands. Plaintiff was battered by Washington, whom plaintiff and several other officers were sent to arrest, and by other unnamed individuals. Plaintiff brought suit, with counts against Pyramid and Woodlands sounding in negligence and wilful and wanton behavior. The count alleging assault and battery against Washington is not at issue in this case. Pyramid and Woodlands filed a motion to dismiss pursuant to section 2—615 of the Code of Civil Procedure (735 ILCS 5/2—615 (West 1996)). The court granted the motion and found no reason to delay enforcement or appeal of its order. This appeal followed.

■ A trial court should grant a section 2—615 motion only if it

clearly appears that no set of facts could ever be proved that would entitle the plaintiff to recover. *Mt. Zion State Bank & Trust v. Consolidated Communications, Inc.*, 169 Ill. 2d 110, 115 (1995). In ruling on a section 2—615 motion, a court may only consider facts apparent from the face of the pleadings, matters of which the court can take judicial notice, and judicial admissions in the record. *Mt. Zion*, 169 Ill. 2d at 115. When reviewing an order granting such a motion, we take as true all well-pleaded facts and all reasonable inferences from them. *Mt. Zion*, 169 Ill. 2d at 115. We also interpret facts alleged in the complaint in the light most favorable to the plaintiff. *Duncan v. Rzonca*, 133 Ill. App. 3d 184, 191 (1985). A trial court's order of dismissal may be sustained on any basis found in the record. *Duncan*, 133 Ill. App. 3d at 191.

Plaintiff contends that the trial court erred in granting the motion to dismiss. Plaintiff argues that the court incorrectly held that our supreme court's ruling in *Fancil v. Q.S.E. Foods, Inc.*, 60 Ill. 2d 552 (1975), mandated the dismissal of the complaint in this case. We disagree.

■ In *Fancil*, the plaintiff's decedent was an on-duty police officer who was fatally shot by burglars while he was performing a routine security check at the defendant's premises. The plaintiff there alleged in her amended complaint that the defendant knew of prior attempted and actual burglaries that had occurred at that location and negligently and carelessly failed to provide adequate lighting at the location, disconnected a light that had previously lighted the area in question, and failed to make provision for inspection of the south side of its building by police officers from the safety of their patrol cars, as officers inspected the premises each night as part of their regular duties. *Fancil*, 60 Ill. 2d at 553-54. The trial court dismissed the amended complaint for failure to state a cause of action. Our supreme court held that a possessor of land owes to a fireman or policeman who is performing his official duties at a place where he might reasonably be expected to be the same duty owed to an invitee, that is, reasonable care to protect against a known dangerous condition on the premises, wherein the dangerous condition constitutes an unreasonable risk of harm to the invitee and the possessor should expect that the invitee will not discover or realize the danger or will fail to protect himself against it. *Fancil*, 60 Ill. 2d at 556-57. Thus, the court ruled that the danger to which the decedent had been exposed was the same risk that all police officers encountered while performing security checks; being ambushed by armed criminals lurking in poorly lit areas is a risk inherent in the occupation and was not an unreasonable risk for a police officer. *Fancil*, 60 Ill. 2d at 558. Furthermore, the decedent, as

well as the defendant, knew of the dangerous conditions, *i.e.*, that the area was poorly lit and that potentially dangerous unauthorized persons might be on the property. *Fancil*, 60 Ill. 2d at 557-58. Therefore, the court found as a matter of law that no allegations would establish the duty to use reasonable care for the protection of the decedent and affirmed the trial court's dismissal of the complaint.

■ Plaintiff here first attempts to distinguish the facts of *Fancil* in order to show its inapplicability to this case. According to plaintiff, he did not allege a physical condition of the land, such as the poor lighting alleged in *Fancil*, as an allegation of negligence. Instead, he alleges that the defendants negligently created the conditions present in the parking lot on the night in question through their ownership, management and control over the apartment complex. Plaintiff alleged that defendants terminated their on-premises security staff while knowing of criminal activity in the complex, permitted known criminals, evicted tenants, known gang members and previously barred individuals to live and congregate on the premises, failed to screen tenants for criminal history or gang affiliation, failed to implement security recommendations made by the Aurora police department, and knew or should have known that, on a prior occasion, police officers were injured on the premises while trying to effectuate an arrest. According to plaintiff, defendants' negligence created an almost absolute certainty that any police officer entering the complex would have been the victim of a criminal act by a third party.

We fail to discern how the facts in this case distinguish it from *Fancil*. Just as any police officer faces the inherent risk of being injured or killed while performing a premises check, all police officers face the inherent risk of being injured by a suspected criminal and his cohorts in an attempt to place him under arrest. Arrestees are known to resist arrest, sometimes violently, and friends of the arrestees sometimes attempt to help their friends. Plaintiff alleged that the defendants knew of a prior incident on the property wherein Aurora police officers attempting to effectuate an arrest were injured by third parties. It is apparent that plaintiff and the Aurora police department were also aware of the danger, as multiple officers were sent to arrest Jeffrey Washington. In no way are we making light of the risks assumed by a police officer each day as the officer serves and protects the community. We simply conclude that the risk of being injured by a violent arrestee is a risk inherent in the work of a police officer every time an arrest is made. Furthermore, in this case, as in *Fancil*, the potential danger was specifically known to plaintiff, as a prior arrest at that location had resulted in violence against police officers. *Fancil* is clearly applicable to this case. Following *Fancil*, we find the plaintiff

can prove no set of facts that will entitle him to relief. Therefore, the trial court did not err in dismissing the complaint.

Citing to *Duncan v. Rzonca*, 133 Ill. App. 3d 184, 193 (1985), plaintiff argues that the issue of duties owed by and to individuals reflects the needs, wishes, and tolerances of society as determined by the court and that those needs, wishes, and tolerances have changed since *Fancil* was promulgated in 1975. We find no such change. Police officers will always face danger as they patrol our communities. Bad people will behave badly. Society has not reached the point where it mandates that citizens shall be liable for failing to protect police officers effectuating an arrest on the citizens' property. Society gives police officers the tools to perform their jobs. It has provided criminal sanctions for those who resist a police officer (720 ILCS 5/31—1 (West 1996)), disarm an officer (720 ILCS 5/31—1a (West 1996)), refuse to aid an officer (720 ILCS 5/31—8 (West 1996)), batter an officer (720 ILCS 5/12—4(b)(6) (West 1996)), or murder an officer (720 ILCS 5/9—1(b)(1) (West 1996)). The imposition of a duty is dependent upon the factors of foreseeability, likelihood of injury, the magnitude of the burden of guarding against it, and the consequences of placing that burden on the defendant. *Duncan*, 133 Ill. App. 3d at 192. Society has long provided for the protection of its police officers. It has not, however, decided to place the burden of protecting police officers on individuals as opposed to society at large, and we will not take that step today.

For these reasons, the judgment of the circuit court of Kane County is affirmed.

Affirmed.

GEIGER and GALASSO, JJ., concur.