VERNON NELSON *et al.*, as Special Adm'rs for the Estate of Eva Nelson, Deceased, Plaintiffs-Appellants, v. AURORA EQUIPMENT COMPANY, Defendant-Appellee (Georgia-Pacific Corporation *et al.*, Defendants).

Second District No. 2—08—0186

Opinion filed May 29, 2009.

Michael P. Cascino, Jacqueline J. Herring, and Andrew S. Pigott, all of Cascino Vaughan Law Offices, Ltd., of Chicago, and Thomas J. Fleischmann, of Thomas J. Fleischmann & Associates, of St. Charles, for appellants.

Douglas M. Sinars and Megan S. Marzec, both of Matushek, Nilles & Sinars, LLC, of Chicago, for appellee.

PRESIDING JUSTICE ZENOFF delivered the opinion of the court:

Plaintiffs, Vernon Nelson (Vernon) and John Q. Nelson (John), special administrators of the estate of Eva Nelson (Eva), deceased, appeal from an order of the circuit court of Kane County granting summary judgment in favor of defendant, Aurora Equipment Company (Aurora). This is a case of first impression in Illinois in which plaintiffs ask us to extend a duty in a premises liability case to a person who did not have contact with the premises but who was allegedly injured by asbestos fibers and dust that escaped from the premises. We affirm the judgment of the circuit court.

## BACKGROUND

Eva, the deceased, was married to Vernon and was John's mother. Vernon was employed by Aurora in Aurora, Illinois, from 1968 to 1987, and John was employed by Aurora from 1977 to 1993. Aurora painted, packaged, and sold steel manufactured items. Eva was never employed by Aurora and did not encounter any condition on Aurora's premises as a result of being an entrant onto those premises.

According to plaintiffs' third amended complaint, Vernon and John were regularly exposed to asbestos fibers and dust at Aurora's facility, and those fibers and dust attached themselves to Vernon's and John's work clothing, which they wore home. Plaintiffs alleged that Eva was around Vernon when he was wearing the contaminated clothing and that she washed the clothes and breathed in the asbestos fibers and dust, thus becoming exposed. Plaintiffs alleged that, as a direct and proximate result of her exposure to asbestos from defendant's facility, Eva was stricken with mesothelioma and colon cancer, which caused her death on January 9, 2004. Plaintiffs also alleged that Eva was exposed elsewhere, but this appeal concerns only the complaint against Aurora.

Count II of the third amended complaint was directed against Aurora and alleged a cause of action for premises liability. On July 9, 2007, Aurora filed a motion for summary judgment on the bases that it did not owe a duty to Eva and that there was no evidence that Eva was exposed as a result of Aurora's activities. The trial court granted the motion for summary judgment on November 13, 2007, on the basis that the magnitude of the burden and the consequences of assigning blame to Aurora militated against imposing a duty. Plaintiffs alleged that Aurora's use of its premises involved an unreasonable risk of harm not only to persons on the premises, but to "those who

might breathe fibers deposited on said persons," thus, in the trial court's determination, potentially creating a limitless number of plaintiffs. Because the trial court found that no duty existed, it did not address the issue of proximate cause. On February 5, 2008, the trial court denied plaintiffs' motion to reconsider and entered a written finding pursuant to Supreme Court Rule 304(a) (210 Ill. 2d R. 304(a)). This timely appeal followed.

## ANALYSIS

Plaintiffs alleged that Aurora had a duty of ordinary care "to provide a reasonably safe place for persons lawfully on the property and to those who could foreseeably be harmed by dangerous conditions on [Aurora's] premises." Plaintiffs urge us to impose a duty on Aurora to guard against off-premises injury caused by airborne asbestos generated on Aurora's premises, because it was foreseeable that such exposure would cause injury and death. Aurora posits that the law imposes no duty because it had no relationship with Eva and, absent a relationship, foreseeability of injury is not relevant. The trial court found that Eva's injuries and death were foreseeable, but it held that to impose a duty would create a limitless number of potential plaintiffs, as literally anyone who came in contact with Vernon's and John's work clothes could be exposed. As we have noted, plaintiffs pleaded a cause of action for premises liability. At oral argument, plaintiffs' counsel reiterated that the theory of liability upon which plaintiffs were proceeding was premises liability. We must consider whether a duty arises within the context of the cause of action actually pleaded, not whether some other theory of liability not pleaded would dictate a different result. Plaintiffs cannot raise a new theory for the first time on appeal. *Gregory v. Beazer East*, 384 Ill. App. 3d 178, 195 (2008). Nor are we free to ignore the body of case law, particularly those precedents set by our supreme court, in this area. It is well settled that the appellate court must follow the law as declared by our supreme court. *Ausman v. Arthur Andersen, LLP*, 348 Ill. App. 3d 781, 787-88 (2004).

Summary judgment is proper when the pleadings, depositions, and affidavits on file demonstrate that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. *Mercado v. Village of Addison*, 385 Ill. App. 3d 1006, 1008 (2008). We review an order granting summary judgment *de novo. Mercado*, 385 Ill. App. 3d at 1008. Furthermore, the question of whether a duty exists is a matter of law to be determined by the court. *Hollywood Trucking, Inc. v. Watters*, 385 Ill. App. 3d 237, 241 (2008). We review the disposition of the lower court on a question of law *de novo. United*

*States Steel Corp. v. Illinois Pollution Control Board*, 384 Ill. App. 3d 457, 461 (2008).

## GENERAL DUTY ANALYSIS

■ A premises-liability action is a negligence claim. See *Salazar v. Crown Enterprises, Inc.*, 328 Ill. App. 3d 735, 740 (2001). The essential elements of a cause of action based on common-law negligence are the existence of a duty owed by the defendant to the plaintiff, a breach of that duty, and an injury proximately caused by that breach. *Ward v. K mart Corp.*, 136 Ill. 2d 132, 140 (1990). The determination of whether a duty exists rests on whether the defendant and the plaintiff stood in such a relationship to one another that the law imposed upon the defendant an obligation of reasonable conduct for the benefit of the plaintiff. *Kirk v. Michael Reese Hospital & Medical Center*, 117 Ill. 2d 507, 525 (1987). The reasonable foreseeability of injury is one important concern, but our supreme court has recognized that foreseeability alone "provides an inadequate foundation upon which to base the existence of a legal duty." *Ward*, 136 Ill. 2d at 140. Other factors include the likelihood of injury, the magnitude of the burden of guarding against it, and the consequences of placing that burden upon the defendant. *Ward*, 136 Ill. 2d at 140-41. The nature of the relationship between the parties is a threshold question in the duty analysis. *Hollywood*, 385 Ill. App. 3d at 241.

## DUTY IN PREMISES-LIABILITY CASES

"With respect to conditions on land, the scope of the landowner's or occupier's duty owed to *entrants upon his premises* traditionally turned on the status of the *entrant*." (Emphases added.) *Ward*, 136 Ill. 2d at 141. "Traditionally, the liability of a landowner in Illinois has been delineated in terms of the duty owed to persons *present on the land*." (Emphasis added.) *Lee v. Chicago Transit Authority*, 152 Ill. 2d 432, 445-46 (1992). The operator of a business owed his invitees a duty to exercise reasonable care to maintain his premises in a reasonably safe condition for use by the invitees. *Ward*, 136 Ill. 2d at 141. Licensees and trespassers were owed narrower duties. *Ward*, 136 Ill. 2d at 141. The legislature abolished the distinction between invitees and licensees with the enactment of the Premises Liability Act (740 ILCS 130/1 *et seq.* (West 2004)) in 1987. *Ward*, 136 Ill. 2d at 141. Plaintiffs in our case have not based their action against Aurora on the statute but on the common-law duty of a landowner or occupier toward an invitee to use reasonable care to maintain his premises in a reasonably safe condition. See *Ward*, 136 Ill. 2d at 141.

It is readily apparent that these precepts do not fit the present case, because Eva was not an entrant on Aurora's land, and thus she

was neither an invitee, a licensee, nor a trespasser. "Premises" is a house or a building along with its grounds. Black's Law Dictionary 1219 (8th ed. 2004). While Eva is alleged to have come into contact with the asbestos fibers and dust on Vernon's and John's work clothes, those fibers and dust were no longer a condition on Aurora's premises.

Nevertheless, plaintiffs argue that Aurora had a duty to persons off the land who would foreseeably be harmed by conditions on the land. They cite *Forsythe v. Clark USA, Inc.*, 224 Ill. 2d 274 (2007), as setting forth the applicable duty analysis. However, in *Forsythe*, our supreme court recognized the theory of direct-participant liability to impose a duty on a parent company for the negligent acts of its subsidiary, an issue not even remotely presented by our case. Moreover, the court in *Forsythe* employed the same general duty analysis as it did in *Kirk* and *Ward*. The court first said that the "touchstone" of a duty analysis is "to ask whether a plaintiff and a defendant stood in such a relationship to one another that the law imposed upon the defendant an obligation of reasonable conduct for the benefit of the plaintiff." *Forsythe*, 224 Ill. 2d at 280-81. In *Forsythe*, the relationship was established where the parent company directly participated in the wrongdoing of its subsidiary, which proximately caused the plaintiffs' decedents' deaths. *Forsythe*, 224 Ill. 2d at 290. The court then cited the four factors that "inform" this inquiry: (1) the reasonable foreseeability of injury; (2) the likelihood of injury; (3) the magnitude of the burden of guarding against the injury; and (4) the consequences of placing the burden upon the defendant. *Forsythe*, 224 Ill. 2d at 290-91.

Despite the plain language in *Forsythe*, plaintiffs vigorously insist that Illinois looks only to the four factors and not to whether the plaintiff and defendant stood in such a relationship to each other that the law imposed a duty, which inquiry our supreme court described as the "touchstone" of a duty analysis. Plaintiffs also insist that our supreme court employed the four-factors analysis rather than a relationship analysis in *Marshall v. Burger King Corp.*, 222 Ill. 2d 422 (2006). A lengthy discussion is necessary to show that plaintiffs misread *Marshall*.

In *Marshall*, a driver backed into a lamppost and then her car became airborne when the accelerator stuck, and the car crashed through the half-wall and windows of a Burger King restaurant, fatally injuring the decedent, who was eating inside the restaurant. *Marshall*, 222 Ill. 2d at 425. The plaintiff sued Burger King and others, alleging that the defendants did not exercise due care in designing, constructing, and maintaining the restaurant and that their failure to do so proximately caused the decedent's death. *Marshall*, 222 Ill. 2d at 424-25. The defendants filed a motion to dismiss the complaint and argued

that they owed no duty to the decedent. *Marshall*, 222 Ill. 2d at 427. The trial court granted the motion to dismiss, and this court reversed and remanded for further proceedings. *Marshall*, 222 Ill. 2d at 427. Our supreme court granted leave to appeal. The defendants argued that the possibility of an out-of-control car penetrating the restaurant and injuring the decedent was not reasonably foreseeable, and they criticized the appellate court for determining that a duty existed without addressing the four factors. *Marshall*, 222 Ill. 2d at 431.

Our supreme court began its analysis by saying that the scope of its inquiry was limited to whether the defendants, as owners and operators of a business, owed a duty to the decedent, who was their business invitee. *Marshall*, 222 Ill. 2d at 433. Thus, the discussion in *Marshall* commenced with a focus on the relationship between the defendants and the decedent.

> "The touchstone of this court's duty analysis is to ask whether a plaintiff and a defendant stood in such a relationship to one another that the law imposed upon the defendant an obligation of reasonable conduct for the benefit of the plaintiff. [Citations.] This court often discusses the policy considerations that inform this inquiry in terms of four factors: (1) the reasonable foreseeability of the injury; (2) the likelihood of the injury; (3) the magnitude of the burden of guarding against the injury; and (4) the consequences of placing that burden on the defendant. [Citations.]" *Marshall*, 222 Ill. 2d at 436-37.

The court next said that the defendants relied extensively on the four factors in arguing that they owed no duty, while the plaintiff emphasized the relationship plus the four factors in arguing that a duty existed. *Marshall*, 222 Ill. 2d at 437. At this point, the court stated:

> "As we shall explain, the special relationship between a business invitor and invitee does indeed give rise to a duty of reasonable care that is applicable to this case, and the factors relied on by defendants do not support the creation of an exemption from that duty." *Marshall*, 222 Ill. 2d at 437.

The court then moved into a discussion of the Restatement (Second) of Torts and said that the general rule articulated in section 314A of the Restatement, "and long recognized by this court, [is] that certain special relationships may give rise to an affirmative duty to aid or protect another against unreasonable risk of physical harm." *Marshall*, 222 Ill. 2d at 438. The court said that one such special relationship was between business invitor and invitee. *Marshall*, 222 Ill. 2d at 438-39. The court concluded that a duty existed in *Marshall* because "[d]efendants' business, a restaurant, is undoubtedly of such a nature that it places defendants in a special relationship with their custom-

ers, as it is an establishment open to the general public for business purposes." *Marshall*, 222 Ill. 2d at 440.

■ Our supreme court next addressed the policy considerations behind finding that a duty existed, beginning with the following context:

> "Thus, in determining whether a plaintiff and a defendant stand in such a relationship to one another that the law imposes an obligation of reasonable conduct on the defendant for the benefit of the plaintiff [citation], we are confronted with a decision of policy.
>
> In the case of a business invitee harmed by the negligent act of a third person, the policy justifying the business invitor's duty of reasonable care is related to the affirmative action the invitor takes in opening his business to the public and to the potential for harm that a business open to the public poses." *Marshall*, 222 Ill. 2d at 441.

The court then moved into a discussion of the four factors, finding that the accident was reasonably foreseeable, that the likelihood of such an occurrence was high, and that the burden of guarding against the injury and the consequences of placing that burden on the defendants were speculative. *Marshall*, 222 Ill. 2d at 442. The court observed that the defendants were erroneously conflating duty with breach of duty and said:

> "Thus, the issue in this case is not whether defendants had a duty to install protective poles, or a duty to prevent a car from entering the restaurant, or some such other fact-specific formulation. *Because of the special relationship between defendants and the decedent, they owed the decedent a duty of reasonable care.*" (Emphasis added.) *Marshall*, 222 Ill. 2d at 443.

In sum, the *Marshall* court held that the defendants' duty arose from their relationship with the decedent, and it addressed the four factors only in considering whether to create an exemption from that duty. Consequently, we reject plaintiffs' argument that relationship, as part of a duty analysis, has been eliminated in Illinois so that we should look at the four factors only.

Plaintiffs also rely on *Scott & Fetzer Co. v. Montgomery Ward & Co.*, 112 Ill. 2d 378 (1986). In *Scott & Fetzer*, the premises was a warehouse partially occupied by Wards and partially occupied by others collectively known as the adjacent tenants. *Scott & Fetzer*, 112 Ill. 2d at 382-83. A fire originated in Wards' portion and caused extensive damage to the adjacent tenants' property. *Scott & Fetzer*, 112 Ill. 2d at 383. Burns was a contractor hired by Wards to install a fire alarm system that would transmit an alarm to the local fire department. *Scott & Fetzer*, 112 Ill. 2d at 383-84. The system allegedly malfunctioned, causing a small, containable fire to become a conflagration

that caused millions of dollars' worth of damage. *Scott & Fetzer*, 112 Ill. 2d at 382-83. The adjacent tenants sued Burns for negligence in installing the system, and Burns maintained that it owed no duty to the adjacent tenants. *Scott & Fetzer*, 112 Ill. 2d at 388. Our supreme court held that the four factors that inform duty noted above, especially the reasonable foreseeability of injury and the magnitude of placing the burden on the defendant, weighed in favor of finding that a duty existed. *Scott & Fetzer*, 112 Ill. 2d at 388-90. *Scott & Fetzer* is inapplicable to our case. The adjacent tenants did not occupy Wards' space within the warehouse, but they were within the warehouse itself, which was the premises. While Burns and the adjacent tenants had no contractual privity, the adjacent tenants alleged that they relied on Burns's undertaking with Wards, thus establishing a relationship. Moreover, the negligence cause of action that the adjacent tenants pleaded was based on Burns's undertaking to render services to Wards, which Burns should have recognized were necessary for the protection of third persons or their things. *Scott & Fetzer*, 112 Ill. 2d at 390. Here, Aurora did not undertake to render any services that it should have recognized as necessary for the protection of third persons. In further contrast to *Scott & Fetzer*, plaintiffs did not allege that Eva relied on anything Aurora did.

Plaintiffs' reliance on the four other cases they cite is likewise misplaced. *Cooper v. Randall*, 59 Ill. 317 (1871), and *Wylie v. Elwood*, 34 Ill. App. 244 (1889), were nuisance cases; *Raffen v. International Contractors, Inc.*, 349 Ill. App. 3d 229 (2004), was a wrongful death case arising out of an automobile collision caused by a snowpile that obstructed both drivers' vision, and this court held that the defendant owed a duty of due care once it undertook to plow the snow. *Raffen*, 349 Ill. App. 3d at 234. Those cases did not involve extending a duty to a person who did not come into some type of contact with the dangerous or offending conditions on the land. While the decedent in *Raffen* did not make direct physical contact with the snowpile, the snowpile was the condition on the defendant's land that caused the injury. In other words, snow did not blow off the pile, away from the land, and cause harm.

The only case cited by plaintiffs with any plausible relation to our case is *Duncan v. Rzonca*, 133 Ill. App. 3d 184 (1985), where an on-duty police officer who was responding to a bank's false alarm was injured when his car was struck before he reached the bank. The plaintiff alleged that the bank was negligent in its control, use, and maintenance of its premises in that it failed to remedy a dangerous condition, which was an alarm button exposed on the back of a desk that was accessible to the public. *Duncan*, 133 Ill. App. 3d at 191. The

plaintiff alleged that the bank had failed to control an invitee's three-year-old son who had on numerous occasions pushed the button and sounded a false alarm, causing the police to respond to the premises. *Duncan*, 133 Ill. App. 3d at 192. The bank contended that it owed no duty to the plaintiff because the plaintiff was not injured on the bank's premises. *Duncan*, 133 Ill. App. 3d at 193. The appellate court held that a duty existed because the plaintiff had a "connection" to the bank. *Duncan*, 133 Ill. App. 3d at 193. The court held that the plaintiff and the bank had a special relationship that gave rise to a duty because the police had the unquestioned and immediate duty to respond to the alarm when activated. *Duncan*, 133 Ill. App. 3d at 194. In our case, Eva had no relationship with Aurora. She never encountered any condition on Aurora's premises, nor was she in a position to have to enter the premises for any reason.

Plaintiffs ask us to ignore the requirements of the cause of action they pleaded—premises liability—and to hold that a premises owner is liable to persons off the premises when it is foreseeable that a danger on the premises will cause injury to those persons. Plaintiffs concede that Eva had no relationship with Aurora's premises, and we cannot rewrite the law of premises liability as it has been established by our supreme court. Whether plaintiffs could have prevailed on some other theory of liability is not before us. "The law allows a plaintiff to pursue as many causes of action as the facts and good-faith pleading permit." *Gehrett v. Chrysler Corp.*, 379 Ill. App. 3d 162, 175 (2008). In this case, plaintiffs pursued only one theory, premises liability, which requires that a plaintiff either be an entrant onto the defendant's premises or otherwise have some special relationship with the defendant.

### THE TRIAL COURT'S GRANT OF SUMMARY JUDGMENT

■ The trial court ultimately concluded that no duty existed because the magnitude of the burden and the consequences of placing that burden on Aurora militated against finding a duty. We have reviewed the trial court's judgment in the context of the relationship between the parties, which *Marshall* says is the touchstone of a duty analysis (*Marshall*, 222 Ill. 2d at 436), and determined that no duty exists because no relationship exists. We review the trial court's judgment and not the reasons given for that judgment. *People v. DeBerry*, 372 Ill. App. 3d 1056, 1058 (2007). An appellate court may affirm the trial court's decision on any basis appearing in the record. *Jandeska v. Prairie International Trucks, Inc.*, 383 Ill. App. 3d 396, 398 (2008). Because we have determined that Aurora owed no duty to Eva, we do not reach plaintiffs' second argument—that Aurora caused Eva's fatal

injuries. Accordingly, the judgment of the circuit court of Kane County is affirmed.

Affirmed.

McLAREN and HUTCHINSON, JJ., concur.